David C. WOLCOTT, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, et al., Defendants.

No. C-2-84-854.

United States District Court,
S.D. Ohio, E.D.

July 15, 1987.

On Motions to Alter and Amend Judgment
Aug. 12, 1987.

James W. Lewis, Brownfield, Bally & Goodman, Columbus, Ohio (Roderick R. McKelvie, Ashby, McKelvie & Geddes, Wilmington, Del., of counsel), for plaintiff.

Larry H. James, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

Plaintiff herein, David C. Wolcott, brings an action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* to recover from defendants pension benefits allegedly owed to him and to obtain declaratory relief. Plaintiff has also asserted breach of contract claims based upon pendent and diversity jurisdiction. The controversy in the case centers around the terms of plaintiff's Agent's Agreement with Nationwide Insurance Companies, in particular those provi-

sions dealing with the Agent's Security Compensation Plan, and whether the laws of ERISA govern the administration of that plan.

The parties are in basic agreement concerning the general history of the case. Plaintiff first became an agent of the defendant insurance companies in 1963. Except for a period of time between 1965 and 1967, when plaintiff was employed as a district manager for defendants, plaintiff remained a licensed agent of the defendants until April, 1982. The terms of the agency arrangement were governed by the Agent's Agreement entered into by plaintiff and defendants. This agreement was renewed and revised over the years of plaintiff's association with the defendant companies.

Under the terms of the agreement, plaintiff was a "captive agent" for the defendants, that is, he was authorized to sell only Nationwide Insurance policies unless he obtained the prior written consent of defendants to write a policy through another company. The agreement defined plaintiff's relationship with the company as that of an independent contractor, and he was paid a commission on his policy sales and renewals. Plaintiff operated his Nationwide agency under the name David C. Wolcott Agency from an office at 2601 Annand Drive, Wilmington, Delaware. Plaintiff's wife, Ruth Wolcott, and plaintiff's daughter, Theresa Hurka, were licensed through Nationwide and worked in plaintiff's office.

The Agent's Agreement also included the terms and conditions of the Agent's Security Compensation Plan. The plan contains two types of benefits, deferred compensation incentive credits and extended earnings. The plan terms include a forfeiture provision which states that the plan will not be liable to a beneficiary who engages in the solicitation or sale of insurance within a year after the termination of the Agent's Agreement and within a twenty-five mile radius of his business location at the time of cancellation.

Late in 1981, Ruth Wolcott and Theresa Hurka formed an insurance agency under the business names of Wolcott and Associ-ates and Corporate Risk Specialists. This new agency solicited and wrote policies for insurance companies other than Nationwide. Corporate Risk Specialists shared office space with plaintiff's agency in the office condominium owned by plaintiff and his wife at 2601 Annand Drive, and the two agencies shared the same phone number. Ruth Wolcott and Theresa Hurka continued to perform some work for plaintiff's agency even after the formation of Corporate Risk Specialists. Ruth Wolcott also retained her subagent status with Nationwide.

In April of 1982, George and Kathryn Hart, clients of plaintiff's agency, were sent a letter by Corporate Risk Specialists, signed "Wolcott & Associates", advising them that their agency now represented additional major insurance companies. Enclosed with the letter, for their consideration, was a replacement policy placed with a company other than Nationwide. Finally, the letter thanked the Harts for their "past valued business" and the "loyalty and confidence you have displayed in dealing with our office over the years."

This letter came to the attention of the defendants and on April 29, 1982, the defendants notified plaintiff that they were immediately cancelling his Agent's Agreement. Plaintiff sought review of this decision with the Nationwide Agents Administrative Review Board, but the termination was affirmed. In May of 1982, plaintiff became associated with Corporate Risk Specialists at the site of his former Nationwide office, and wrote and solicited policies with other insurance companies from that time onward. Plaintiff inquired about his benefits under the Agent's Security Compensation Plan, and was advised by letter that his cancellation was "unqualified", that is, he was ineligible for benefits, because of his violation of the forfeiture clause.

On April 27, 1984, plaintiff filed the instant complaint. Both plaintiff and defendants have filed motions for summary judgment. Summary judgment procedures are governed by Rule 56, Fed.R.Civ.P. which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.

The evidence must be viewed in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Plaintiff seeks to recover benefits by way of 29 U.S.C. § 1132(a), which provides that a participant or beneficiary of a pension plan may bring a civil action to recover benefits due him under the plan or to clarify his rights to future benefits under the terms of the plan. Plaintiff contends that the forfeiture provision in the Agent's Security Compensation Plan is invalid under ERISA. Plaintiff relies upon 29 U.S.C. § 1053(a) which provides that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age".

The first issue to be resolved is whether plaintiff is an "employee" within the terms of ERISA. The definition of "employee" found in 29 U.S.C. § 1002(2)(B)(6) states simply that "The term 'employee' means any individual employed by an employer." This definition provides little insight into the problem. Therefore, courts have turned to other sources in determining whether an individual is an employee under ERISA.

The courts in *Short v. Central States, Southeast and Southwest Areas Pension Fund*, 729 F.2d 567 (8th Cir.1984) and *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980) looked to traditional common law tests for determining whether an individual was an employee or an independent contractor in the pension plan context.

Additional guidance is provided by decisions of the United States Supreme Court interpreting the term "employee" as used in other regulatory legislation. Those decisions hold that the term "employee" is to be construed in light of the purpose of the statute, that is, the mischief to be corrected and the end to be attained. See e.g. *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947); *NLRB v. Hearst Publications*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). Basically, the total situation must be considered in making this determination, and any one factor is not controlling. *United States v. Silk, supra*, 331 U.S. at 719, 67 S.Ct. at 1471.

Factors in making this determination include, but are not limited to: 1) the nature and degree of control retained by the employer; 2) the degree of supervision retained by the employer over the details of the work; 3) the extent to which services are an integral part of the employer's business or a distinct business; 4) the duration of the relationship; 5) who supplies the place or instrumentalities of work; 6) the method of payment; 7) the "employee's" opportunity for loss or profit; 8) the amount of initiative, skill, judgment or foresight required of the "employee" for the success of the enterprise; 9) the right to discharge; 10) whether the "employee" is engaged in a business apart from the business of the employer; 11) whether an "employee" can hire and control his own employees; and 12) whether the employer withholds taxes or pays social security for the "employee".

The court in *Darden v. Nationwide Mutual Insurance Co.*, 796 F.2d 701 (4th Cir. 1986) formulated additional tests specifically directed toward the analysis of whether an individual is an employee for purposes of ERISA. These standards are as follows: 1) the "employee" must anticipate retirement benefits, or in other words, the employer must have taken some action that created a reasonable expectation on the

"employee's" part that benefits would be paid in the future; 2) the "employee" must have relied on these expectations by remaining a substantial period of time with the employer and by foregoing other significant means of providing for his or her retirement; and 3) the "employee" must lack sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits. *Id.* at 706–707.

The circumstances relevant to the present case, as set forth in the Agent's Agreement and the affidavits and depositions on file, are basically undisputed and reveal no genuine issue of material fact. The Agent's Agreement states that plaintiff was an independent contractor. Plaintiff was required to arrange for his own office space and hire and control his own office employees. He was responsible for his own office expenses and for securing and keeping a license to sell insurance. He was paid on a commission basis rather than by salary except for his first two years as an agent. Thus, the amount of profit made by plaintiff depended largely upon his own skill, judgment and initiative. Plaintiff was free to exercise his own judgment as to the time and manner of sales. Agents such as plaintiff were not eligible to participate in defendants' employee pension or profit sharing plans and did not receive vacation or sick pay. The defendant companies did not withhold income taxes or pay social security taxes for agents such as plaintiff. Plaintiff was responsible for purchasing his own health insurance, although Nationwide offered a group policy which agents could opt to buy. Plaintiff prepared the income tax return for his agency as a business. Either party to the Agent's Agreement had a right to cancel at any time upon written notice.

The record further reveals that defendants provided forms to the agent which remained the property of the company. Plaintiff was listed in the yellow pages of the phone book as a Nationwide Agent and had a Nationwide sign outside his office. Defendants offered training sessions which agents were supposedly free to attend or not as they pleased. However, plaintiff's unrefuted statement in his deposition indicates that as a practical matter, the district manager would admonish him for not attending such meetings. Educational courses were paid for by the defendants. Agents were eligible to join defendants' employee credit union after two years. Failure to keep sales up could result in cancellation of the Agent's Agreement. The business of the agent, selling insurance, was an integral part of the defendants' business. Plaintiff was exclusively a Nationwide agent, and he had no business distinct from that of the defendants unless they authorized him to sell an insurance policy through other companies.

In regard to the additional factors set forth in *Darden v. Nationwide Mutual Insurance Co., supra,* the record reveals that defendants, by incorporating the Agent's Security Compensation Plan into the Agent's Agreement, created a reasonable expectation that benefits would be forthcoming in the future. Plaintiff relied on that expectation by remaining an agent for the defendants from 1963 to 1982 (excluding the period between 1965 and 1967 when he was a district manager for defendants). Plaintiff also maintained an individual retirement account in the form of a Keough Plan. Defendants' agents were advised to secure such individual plans for retirement. The record demonstrates that on those occasions when plaintiff objected to changes which were made in the terms of the Agent's Agreement, he was told to sign it as it was written or he did not have a contract, thus indicating little bargaining power on plaintiff's part.

■ Weighing the totality of the circumstances in the present case, the Court has reached the conclusion that plaintiff is a member of the class of people which Congress sought to protect in enacting ERISA, and that plaintiff is an employee for purposes of ERISA.

The next issue presented for resolution is whether the Agent's Security Compensation Plan is an employee pension plan for purposes of ERISA. An employee pension benefit plan is defined in 29 U.S.C. § 1002(2)(A) as

... any plan, fund, or program which was heretofore or is hereafter established by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program—(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

The Agent's Security Compensation Plan is composed of two types of benefits, deferred compensation incentive credits and extended earnings. These two plans will be considered separately.

■ The deferred compensation feature of the plan, as set forth in paragraph 11 of the Agent's Agreement, is financed through contributions made by the defendants on the agent's behalf to a group annuity. The amount of the contribution is calculated based upon a percentage of the sales and renewal fees earned by the agent. Contributions to the agent's account commence upon the agent's completion of five years of service and continue until the agent reaches age sixty-five. The Deferred Compensation Plan incorporates the minimum vesting schedule set forth in 29 U.S.C. § 1053(a)(2)(C)(i). A plan participant may elect to receive early reduced deferred compensation benefits at any time upon or after reaching the age of fifty and is entitled to one hundred percent of the accrued benefits if payments commence at age sixty. Benefits are paid over a period of three to ten years or as a life annuity. The Court concludes that the Deferred Compensation Plan provides retirement income to employees and is an employee pension benefit plan under ERISA.

■ The Extended Earnings Plan establishes a benefit whereby an agent with at least five years of service whose agency agreement is terminated upon retirement, death or disability, or qualified cancellation for other reason, is entitled to a sum equal to the renewal service fees paid to the agent by the company for the last twelve calendar months immediately proceeding the cancellation of the agreement. The benefit is payable commencing sixty days following the termination of the Agent's Agreement, and payments are made over a period of three to ten years or as a life annuity depending upon the method of payment elected by the agent. The benefit is financed by decreasing for a period of two years the renewal commission rates of the agent who takes over the files of the departing agent. Payments do not depend upon the agent reaching a certain age.

The extended earnings benefit closely resembles the plan considered by the Fourth Circuit Court of Appeals in *Fraver v. North Carolina Farm Bureau Mut. Ins. Co.*, 801 F.2d 675 (1986). The court in *Fraver* held that the contractual provisions in that case establishing termination benefits for insurance agents, under which departing agents received payments based upon renewal commissions, with no requirement for termination due to death, disability or retirement, did not constitute a pension plan within the meaning of 29 U.S.C. § 1002(2)(A); rather, those benefits were a form of final compensation in the nature of a buy-out. *Id.* at 678.

Plaintiff relies on 29 C.F.R. § 2510.3–2(b), which provides that an arrangement shall not be deemed to constitute a pension plan solely by reason of the payment of severance benefits upon termination if the payments are not contingent upon retirement, the total payment does not exceed an amount twice the employee's compensation for the preceding year and payments are completed within twenty-four months of termination. However, the regulation does not state that if payments are made over a period exceeding twenty-four months, the benefit plan is always a pension plan.

The Court is persuaded by the reasoning of the Fourth Circuit in *Fraver*. The extended earnings Plan in this case is not a pension plan within the provisions of ERISA.

■ The next question to be resolved is whether the above plans fall within the prohibition against forfeiture of benefits found in 29 U.S.C. § 1053(a). The Extend-

ed Earnings Plan is not a pension plan within the meaning of 29 U.S.C. § 1002(2)(A) and therefore the nonforfeiture provision does not apply to benefits under that plan. In addition, courts have noted that an employee only has a nonforfeitable right in his "accrued" benefits. The term "accrued benefits" means the individual's accrued benefit expressed in the form of an annual benefit commencing at normal retirement age. 29 U.S.C. § 1002(23)(A). Severance payments prior to normal retirement age are not "accrued" benefits and are therefore subject to forfeiture. *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406 (4th Cir. 1983); *United Electrical, Radio & Machine Workers of America v. Amcast Industrial Corp.*, 634 F.Supp. 1135 (S.D.Ohio 1986).

■ The Deferred Compensation Plan is a pension plan under ERISA. However, defendants argue that the nonforfeiture provision does not apply to that plan by reason of 29 U.S.C. § 1051(2), which states that the vesting requirements do not apply to a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

Plaintiff states in his affidavit that the Deferred Compensation Plan is funded and that benefits accrue on an annual basis in a group annuity contract with Nationwide Life Insurance Company. Defendants maintain in their brief that the plan is not funded, but have presented no evidence to support their position, which they are required to do in the face of a motion for summary judgment. The court concludes that the plan is funded.

■ The parties have submitted figures on whether agents are a select group of highly compensated employees. Defendants have submitted evidence that the average amount of yearly earnings for agents is $52,022, whereas the average salary of other Nationwide employees is $20,000. Plaintiff counters with evidence that thirty-eight percent of an agent's earnings is required for business expenses, resulting in a net income of $32,250, and that Nationwide's employee retirement plan used the figure $29,700 as an average taxable wage base in 1980. Defendants do not dispute plaintiff's estimate of the percentage of an agent's commissions devoted to business expenses. Even accepting defendants' figures, the court does not feel that the agents here are a "select group" of "highly compensated employees" within the meaning of § 1051(2). Thus, the court concludes that the Deferred Compensation Plan is subject to the nonforfeiture provisions of § 1053(a).

However, this conclusion alone does not resolve the matter of whether plaintiff is immediately entitled to the payment of benefits. Section 1053(a) provides that an employee's right to his "normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." The term "normal retirement age" means the earlier of 1) the time designated in the plan as the normal retirement age, or 2) the later of age sixty-five or the tenth anniversary of the participant's participation in the plan. 29 U.S.C. § 1002(24). The term "normal retirement benefit" means the greater of the early retirement benefit under the plan or the benefit under the plan commencing at normal retirement age.

In the present case, no age is specifically designated in the plan as a "normal retirement age". Since age sixty-five is later here than the tenth anniversary of plaintiff's participation in the plan, the normal retirement age for purposes of this case is sixty-five. The benefits payable at age sixty-five are greater than benefits payable at age fifty. Therefore, normal retirement benefits are those payable at age sixty-five.

Numerous courts have interpreted § 1053(a) as prohibiting forfeiture of benefits only after the participant has reached normal retirement age, and have held that an employee who has not yet reached normal retirement age fails to state a cause of action under ERISA. See *Hurn v. Retirement Fund Trust, Plumbing & Heating Industry of Southern California*, 460 F.Supp. 112 (C.D.Ca.1978), *aff'd*, 648 F.2d 1252 (9th Cir.1981); *Capocci v. General*

*Motors Corp.,* 444 F.Supp. 1306 (D.Ha. 1978); *Riley v. Meba Pension Trust,* 452 F.Supp. 117 (S.D.N.Y.1978); *Fine v. Semet,* 699 F.2d 1091 (11th Cir.1983); *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032 (2nd Cir.1985); *Johnson v. Franco,* 727 F.2d 442 (5th Cir.1984); *Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust,* 662 F.2d 617 (9th Cir.1981).

The forfeiture provisions of § 1053(a) also protect only accrued benefits which are payable upon normal retirement age, not early retirement benefits. *McBarron v. S & T Industries, Inc.,* 771 F.2d 94 (6th Cir.1985); *Hoover v. Cumberland, Maryland Area Teamsters Pension Fund,* 756 F.2d 977 (3rd Cir.1985); *Sutton v. Weirton Steel Division of National Steel Corp., supra.*

■ Plaintiff herein has not yet reached age sixty-five, and he does not currently state a cause of action under § 1053(a). Invocation by defendants of the forfeiture provision designed to preclude competition and their refusal to pay early retirement benefits does not violate § 1053(a). *McBarron v. S & T Industries, Inc., supra; Morse v. Stanley,* 732 F.2d 1139 (2nd Cir.1984); *Fine v. Semet, supra.* However, plaintiff has a vested interest in the Deferred Compensation Plan. When he reaches normal retirement age, defendants may no longer rely on the forfeiture clause to deny him benefits under the plan. Such forfeiture provisions are void to the extent that they reach vested interests protected by ERISA. *Noell v. American Design, Inc., Profit Sharing Plan,* 764 F.2d 827 (11th Cir.1985).

Plaintiff herein has also asserted a claim for breach of contract against the defendants for their refusal to pay benefits under the Agent's Security Compensation Plan portion of the Agent's Agreement.

■ Plaintiff has advanced no claim for damages resulting from the termination of the Agent's Agreement aside from his claim to benefits under the Agent's Security Compensation Plan. However, even if the complaint were construed as a general claim of wrongful termination, plaintiff would not prevail on that claim. The Agent's Agreement, paragraph nine, gave both parties to the Agreement the unqualified right to cancel the Agreement at any time upon notice to the other party. The good faith requirement contained in the Uniform Commercial Code does not apply to an insurance agent's contract such as this one. *Cavanaugh v. Nationwide Mutual Ins. Co.,* 65 Ohio App.2d 123, 416 N.E.2d 1059 (1976). See generally: *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985); *Fawcett v. G.C. Murphy & Co.,* 46 Ohio St.2d 245, 348 N.E.2d 144 (1976) (right to terminate employment contract at will is absolute and not limited by principles protecting persons from acts done maliciously or in bad faith). Further, even if some good faith requirement applied to the cancellation of the Agent's Agreement, the record does not reveal that defendants acted in bad faith in cancelling the Agreement. Instead, the materials in the record demonstrate that defendants believed in good faith that plaintiff and/or his employees were engaging in competitive activities which were detrimental to defendants' interests and in violation of the Agent's Agreement.

■ The principal legal issue regarding the breach of contract claim is whether the forfeiture provision is valid and enforceable. Paragraph 11(e) of the Agent's Agreement provides:

Unless you have induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with the Companies, the cancellation of this Agreement shall be a qualified cancellation for the purpose of this Agreement.

This clause relates to an agent's conduct prior to the cancellation of the Agreement. The materials in the record reveal that Mrs. Wolcott, while still employed as a solicitor by plaintiff's Nationwide agency, attempted to induce the Harts, Nationwide policyholders, to replace their Nationwide policy with another policy obtained through Corporate Risk Specialists. The affidavit of George Frink reveals that in considera-

tion for Nationwide's certification of a solicitor under state law, agents are required to accept responsibility for the acts of their solicitors and to ensure that solicitors adhere to the exclusive representation requirement of Nationwide companies. Plaintiff was responsible for the conduct of his subagent and indirectly attempted to induce policyholders to replace their policy within the meaning of paragraph 11(e). Therefore, the cancellation of plaintiff's Agent's Agreement was unqualified.

After cancellation of the Agreement, the provisions of paragraph 11(f) become applicable. That part of the Agreement states:

All liability of the Companies for Agent's Security Compensation provided for in paragraph 11 and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur:

(1) You either directly or indirectly, by and for yourself or as an agent for another, or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in anyway be connected with the fire, casualty, health or life insurance business, within one year following cancellation within a 25 mile radius of your business location at that time; or

(2) You fail to return in good condition, within ten days, all materials, records, and supplies furnished to you by the Companies during the course of this Agreement, together with any copies thereof; or

(3) After cancellation of this Agreement, you directly or indirectly induce, attempt to induce, or assist anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with the Companies; furnish any other person or organization with the name of any policyholder of the Companies so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

The depositions of plaintiff and his wife reveal that within a month of the cancellation of his Agent's Agreement, plaintiff had engaged in activity which fell within the provisions of paragraphs 11(f)(1) and (3). Plaintiff engaged in the insurance business within a year of the termination of his Agent's Agreement at the location of his former Nationwide office, and after termination he solicited or attempted to induce his Nationwide clients to replace their Nationwide policies with policies obtained through Corporate Risk Specialists. There is no genuine issue of material fact in that regard.

Cases interpreting Ohio law indicate that the forfeiture provision, particularly paragraph 11(f)(1), is valid. In *Keller v. Graphic Systems of Akron, Inc.,* 422 F.Supp. 1005 (N.D.Ohio 1976), the court applied Ohio law and upheld a forfeiture of benefits for engaging in competitive conduct in violation of the plan terms. The court in that case noted the distinction between benefit plan forfeiture provisions and covenants not to compete in employment contracts.[1] Benefit plan forfeitures are usually upheld as valid. See e.g. *Fraver v. North Carolina Farm Bureau Mut. Ins. Co., supra; Kezdi v. Nationwide Ins. Co.,* No. 35683, Eighth District Court of Appeals, Cuyahoga County, Ohio, decided August 11, 1977; *Brodzinski v. Nationwide Mutual Ins. Co..,* No. 36055, Eighth District Court of Appeals, Cuyahoga County, Ohio, decided August 18, 1977.

The forfeiture of post-termination commissions similar to the extended earnings benefits in this case was upheld in *Bradley v. Pennsylvania Life Ins. Co.,* Case No. C–790508, decided January 14, 1981 by the Court of Appeals for the First Appellate District, Hamilton County, Ohio.

The court in *Snarr v. Picker Corp.,* 29 Ohio App.3d 254, 504 N.E.2d 1168 (1985) analyzed the validity of the forfeiture of pension benefits using the same criteria applied to test the reasonableness of a cov-

---

**1.** The Agent's Agreement in the present case contained such a covenant in paragraph 12 of the Agreement. However, that covenant did not apply to plaintiff, who first entered into an Agent's Agreement prior to July 1, 1969.

enant not to compete. Those factors include:

" '[t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.' " *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25, 325 N.E.2d 544, 547 (1975).

Paragraph 11(f)(1) in the present case contains reasonable limitations as to time and space. Plaintiff contacted his customers, and possessed records concerning policyholders and their policies. The forfeiture provision is aimed at unfair competition, such as soliciting Nationwide customers away from Nationwide using knowledge obtained as a Nationwide agent. The provision does not bar the agent's sole means of support, since he is free to work in the insurance field so long as he does so outside the twenty-five mile radius and one year limitations. The forbidden employment is integrally related to the main employment. The detriment to Nationwide from the competition created by a former agent outweighs the detriment to the agent posed by the loss of pension benefits, particularly since the relationship of trust between an individual agent and an insured can far exceed any loyalty on the part of the insured toward the insurance company. Plaintiff herein had accrued $54,109 in deferred compensation benefits as of 1980 and claimed $76,760 in extended earnings benefits. These amounts are not significant considering that an average career agent earned $52,022 in commissions for the year 1984 alone, and that the amount of commissions represents but a fraction of the actual dollar amount of sales by the agent.

The forfeiture provision in the present case was valid and enforceable and defendants did not breach the Agent's Agreement in denying plaintiff's benefit under the Agency's Security Compensation Plan. The forfeiture provision has a legitimate purpose particularly in regard to the extended earnings portion of the plan. Those extended earnings are financed out of the earnings of the agent who takes over the files of the previous agent, and if that previous agent engages in direct competition with the new agent, attempting to lure away his clients, the foundation of the extended earnings program may be severely damaged. Defendants are entitled to summary judgment on plaintiff's breach of contract claim.

In summary, defendants are awarded partial summary judgment on plaintiff's claims under ERISA. The Extended Earnings Plan is not a plan governed by 29 U.S.C. § 1053(a). Furthermore, plaintiff has not yet reached normal retirement age and therefore does not state a claim under § 1053(a) for deferred compensation benefits. However, pursuant to 29 U.S.C. § 1132, which permits a beneficiary to seek clarification of his rights under a pension plan, plaintiff is hereby awarded a declaratory judgment, as stated in the above opinion, holding that plaintiff will be entitled to full benefits under the Deferred Compensation Plan when he reaches age sixty-five. Defendants are awarded summary judgment on the breach of contract claim. Each party will bear his own costs. In light of the fact that defendants acted in good faith and in a legal manner in refusing payment of benefits at this time, and since the resolution of the present case turned primarily upon substantial questions of law litigated in good faith, not previously addressed in this circuit, plaintiff's request for attorneys fees under 29 U.S.C. § 1132(g) is hereby DENIED. See

e.g. *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987).

The Clerk shall enter judgment in accordance with the Memorandum and Order.

It is so ORDERED.

## ON MOTIONS TO ALTER AND AMEND JUDGMENT

Plaintiff and defendants have both filed motions under Fed.R.Civ.P. 59 to alter and amend the judgment issued in this case on July 15, 1987.

Defendants renew their argument that plaintiff is an independent contractor. They rely upon *Harlow v. Nationwide Mutual Insurance Company*, Case No. N–84–503, (D.Conn.), decided June 19, 1987, in which the district court found that the plaintiffs, Nationwide agents, were independent contractors. The court in *Harlow* advocated the use of the common law test for determining whether a person is an employee as well as examining the remedial purposes of ERISA, the test adopted by the court of appeals in *Darden v. Nationwide Mutual Insurance Co.*, 796 F.2d 701 (4th Cir.1986).

This court, in arriving at its decision as to the nature of plaintiff's status, employed a "totality of the circumstances" test as suggested by the United States Supreme Court decisions concerning regulatory legislation. See e.g. *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947). Thus, this court considered a variety of traditional common law factors in addition to the three part test employed in *Darden*. The determination of the status of any plaintiff as an employee or independent contractor under ERISA of necessity must rest on a case-by-case determination. The court, upon due consideration of the additional authorities and argument presented by defendants, adheres to its original finding that based upon all the circumstances in the present case, plaintiff was an "employee" for purposes of ERISA.

Defendants have also submitted an additional affidavit in support of their position that the Deferred Compensation Plan is not funded. The court adheres to its original determination that the plan is funded. However, even if this court were to find that the plan is unfunded, defendants have still failed to satisfy the second requirement of 29 U.S.C. § 1051(2) which mandates that the plan be maintained for the purpose of providing deferred compensation for a select group of highly compensated employees. Defendants' motion to amend the judgment is DENIED.

Plaintiff has also moved for an amended judgment under Rule 59. Plaintiff requests a declaratory judgment allowing him to elect to receive deferred compensation benefits before his attaining age sixty-five at his election, as well as a clarification of his rights under the plan upon his disability or death. Plaintiff relies upon 29 U.S.C. § 1056(a), which provides in relevant part:

Each pension plan shall provide that unless the participant otherwise elects, the payments of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

(2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(3) the participant terminates his service with the employer.

Plaintiff argues that by reason of the above provision, defendants are obligated to commence payment of benefits whenever he so elects. However, that is not the import of § 1056(a). That section was designed to protect a participant's right to benefits by establishing age sixty-five as the latest possible trigger date for payment of benefits, while leaving the employer free to set an earlier date under its ERISA plan. *Morales v. Plaxall*, 541 F.Supp. 1387 (E.D. N.Y.1982). That statute does not require an employer to pay benefits prior to an employee reaching normal retirement age. *Fine v. Semet*, 514 F.Supp. 34 (S.D.Fla. 1981). The election permitted by the statute refers to the employee's option to

waive the age sixty-five starting date for benefits and postpone the payment of benefits to some later time. Plaintiff does not have the right to enforce payment of benefits prior to reaching age sixty-five.

▮ Plaintiff has also requested a clarification of his rights under the Deferred Compensation Plan in the event of his death or disability prior to reaching age sixty-five.

Pursuant to ERISA, disability plans, even when drafted as sub-sections of a comprehensive pension plan, are exempt from the act's non-forfeiture provisions. *McBarron v. S & T Industries, Inc.*, 771 F.2d 94, 97 (6th Cir.1985). Even if a plan participant has a vested right to his disability benefits, under ERISA payment of such benefits may be deferred until he or she reaches normal retirement age. *Id.* at 99. Here, defendants have the right to enforce the terms of the Agent's Agreement and are under no obligation under ERISA to pay disability benefits to plaintiff until he reaches age sixty-five.

The Deferred Compensation Plan provides for the payment of vested benefits to a surviving spouse or other designated beneficiary in the event of the death of the participating agent either before or after the agent's retirement. If the plan terms alone are considered, any obligation on the part of defendants to pay survivor benefits terminated upon plaintiff's violation of paragraphs 11(e) and (f) of the Agent's Agreement. Payment of survivor benefits must therefore be based upon some mandate contained in ERISA.

At the time of plaintiff's termination, a widow's entitlement to her husband's pension plan payments was derivative of her husband's rights, and did not arise until the plan participant became eligible for a pension. *Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust*, 662 F.2d 617 (9th Cir.1981); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762 (9th Cir.1986). The rights of surviving spouses under ERISA have since been enlarged. However, the modifications did not go into effect until after plaintiff's Agent's Agreement was terminated, and the

changes are not retroactive in application. *Gabrielson v. Montgomery Ward & Co., supra* at 765.

Plaintiff's right to receive benefits is not protected from forfeiture under ERISA until he attains normal retirement age. His wife has no independent property rights in those benefits, and her claim to benefits is entirely dependent upon plaintiff's rights. Therefore, if plaintiff dies prior to attaining normal retirement age, his wife will not be entitled to any benefits under the Deferred Compensation Plan. However, once plaintiff reaches age sixty-five, his benefits will become non-forfeitable, and in the event that plaintiff dies after that date, but prior to receiving all the benefits to which he is entitled, the remainder will be payable to his spouse as beneficiary under the terms of the plan.

Plaintiff's motion to amend the judgment is therefore DENIED in part. Plaintiff's motion is GRANTED insofar as it requests additional clarification of his rights under ERISA pursuant to 29 U.S.C. § 1132, and the preceding paragraphs concerning those issues are hereby incorporated into and made a part of this court's judgment of July 15, 1987. Defendants' motion to amend the judgment is DENIED.