Robert T. **PETR**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, et al.**

Civ. No. PN–87–936.

United States District Court,
D. Maryland.

May 4, 1989.

Barry J. Dalnekoff, Dalnekoff & Mason, P.A., Annapolis, Md., for plaintiff.

Terrence M. Finn and Stephen R. Lohman, Smith, Somerville & Case, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

NIEMEYER, District Judge.

The question presented here is whether a compensation plan issued by the defendant insurance companies for their "independent agents" is governed by ERISA, 29 U.S.C. § 1001 et seq. A question of limitations is also raised.

### I.

Robert T. Petr, who had been an independent insurance agent for the defendant insurance companies, filed this suit on April 16, 1987, against the defendants seeking to recover financial benefits allegedly due him under his agency agreement. He named as defendants Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Variable Life Insurance Company, and Colonial Insurance Company of California ("Nationwide"). Petr became licensed as an insurance agent for Nationwide in 1969, progressed to independent agent status in 1971, and reached master agent status in 1974. He remained in master agent status until his departure in April 1984.

Beginning in 1974, Petr became a participant in the "Agent's Security Compensation Plan," a post-termination compensation plan maintained by Nationwide for the benefit of its insurance agents. The plan was amended from time to time, and at the time of Petr's departure it offered various compensation benefits, two of which were the "Deferred Compensation Incentive Credits" Plan ("DCIC Plan") and the "Extended Earnings" Arrangement ("EE Arrangement"). Under the DCIC Plan, Nationwide credited to an account maintained over the years for Petr a percentage of Petr's earnings based on his original and renewal fees for insurance policies. The DCIC Plan benefits became due in installments after death, disability or termination, but in any case not before Petr reached age 50. Under the EE Arrangement, Nationwide agreed to pay Petr upon his departure a sum equal to his policy renewal fees from the prior twelve months. The EE Arrangement benefits were due 60 days after his termination, or in this case, June 17, 1984.

According to the Agent's Security Compensation Plan, Petr would forfeit his right to receive all benefits if after his departure he induced policyholders to lapse, cancel, or replace any insurance contract in force with Nationwide, or if he sold insurance within one year within a twenty-five mile radius of his original business location, or if he failed to return all company records and supplies to Nationwide within ten days of his departure.

By a letter dated April 18, 1984, Petr terminated his employment agreement with Nationwide and requested that his EE Arrangement and DCIC Plan benefits be paid out over a three year period. Nationwide responded to Petr's letter on May 1, 1984, wishing him well and stating that the company would enforce paragraphs 11 and 12 of his agency agreement. Paragraph 11 describes the Agent's Security Compensation Plan and paragraph 12 describes limitations on an agent's ability to compete with Nationwide subsequent to termination of the agreement. Two days later, on May 3, 1984, Nationwide sent Petr a form to designate whether he wanted tax withheld from his benefits. After Petr did not receive the benefits that were first due on June 17, 1984, he called and wrote to Nationwide. On July 18, 1984, Nationwide informed Petr by letter that it would not pay him any benefits because he had violated the sections of his agreement relating to post-termination competitive activity.

Petr filed this suit seeking to benefit from the terms of the Employment Retirement Income Security Act (ERISA), 29 U.S.

C. § 1001, *et seq.* ERISA requires that an employee's right to receive retirement benefits from an employer-sponsored retirement plan must vest and become nonforfeitable after a time period determined in accordance with one of three alternative methods. 29 U.S.C. § 1053(a) (1982 & Supp. IV 1986).

In Counts I and II plaintiff urges that under ERISA his benefits vested and could not be forfeited. He seeks to recover benefits allegedly due under both the DCIC Plan and EE Arrangement. In Count III plaintiff alleges breach of fiduciary duty under ERISA for nonpayment of benefits. Finally, Count IV is a common law contract count in which plaintiff seeks recovery of certain policy renewal commissions.

Pending before the Court is a motion to dismiss filed by the defendants. Defendants contend that this action is barred by a "statute of limitations" contained in the agency agreement between plaintiff and defendants. In the alternative, defendants contend that ERISA does not apply to the payment arrangement established by the agency agreement. The Court will address the ERISA issue first.

## II.

ERISA's nonforfeitability requirements apply if plaintiff is an employee and the benefit arrangement is an employee pension benefit plan under ERISA. 29 U.S.C. § 1053(a) (1982 & Supp. IV 1986). Defendants contend that plaintiff is not an employee as used in ERISA, and that ERISA does not apply because the DCIC Plan and EE Arrangement do not constitute ERISA pension plans. Defendants inform the Court that should this motion be denied, they will argue in a motion for summary judgment to be filed later that plaintiff was not an employee within the meaning of ERISA. The Court agrees with defendants that the employee issue is a fact-bound determination which would be inappropriate to make at this stage of the proceedings. Accordingly, the Court will assume for purposes of the present motion only that plaintiff is an employee within the meaning of ERISA, and therefore the Court will consider only whether the arrangements constitute a pension plan within the meaning of ERISA.

The ERISA statute defines a pension plan as follows:

Except as provided in subparagraph (B) [relating to the Secretary's power to create exempt categories], the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A) (1982).

In *Fraver v. North Carolina Farm Bureau Mutual Ins. Co.*, 801 F.2d 675 (4th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987), the Fourth Circuit considered whether a plan with terms virtually identical to the EE Arrangement at issue in Count II was a pension plan within the meaning of ERISA. The plan in *Fraver*, like the EE Arrangement, provided that upon termination of the agent's contract the insurance company would pay to the agent an amount equal to the agent's renewal fees for the 12 months preceding his termination. *Id.* at 676. The court held that the plan was not a pension plan under ERISA, reasoning that its provisions simply established a final form of compensation as a "buy-out" for the business created by the agent:

[T]he nature of the payments is not indicative of a pension or retirement plan.... The amount of the payment is tied to only one factor, the amount of business

in the last year prior to termination.... [T]he payments are recouped from the individual's successor. In sum, the benefits are in the nature of a buy-out in which the departing agent receives payments based on what he leaves behind in the way of business for his successor. If the departing agent goes into competition with his successor, he is destroying the resource that would be used to pay him.

*Id.* at 678; *see also Wolcott v. Nationwide Mutual Ins. Co.,* 664 F.Supp. 1533, 1538 (S.D.Ohio 1987) (similar EE Arrangement is *not* pension plan within ERISA, following *Fraver*). *But see Plazzo v. Nationwide Mutual Ins. Co.,* 697 F.Supp. 1437, 1450–51 (N.D.Ohio 1988) (similar EE Arrangement *is* pension plan within ERISA, disagreeing with *Fraver*). *Fraver* addressed language virtually identical to that in the EE Arrangement and as the law of this circuit *Fraver* is controlling. Accordingly, because the provisions of the EE Arrangement do not create an employee pension benefit plan under ERISA, the Court will grant defendants' motion to dismiss Count II.

▮ Turning to the language of the DCIC Plan, at least two district courts have considered this exact language and concluded that it does constitute a pension plan within the meaning of ERISA. In *Plazzo, supra,* the court reviewed the provisions of the DCIC Plan and concluded, with little analysis, that the plan was a pension plan within the meaning of ERISA. The court stated:

> In view of the benefit accrual and distribution features of the Deferred Compensation Plan, the court concludes that it provides retirement income to employees and is an employee pension benefit plan under ERISA.

*Plazzo, supra,* 697 F.Supp. at 1450. The court in *Wolcott, supra,* also reviewed the DCIC Plan and concluded, with little analysis, that it provided retirement income to employees and was an employee pension benefit plan under ERISA. *Wolcott, supra,* 664 F.Supp. at 1538.

Plaintiff cites *Darden v. Nationwide Mutual Ins. Co.,* 796 F.2d 701 (4th Cir. 1986), as additional support for his argument that the DCIC Plan is an ERISA pension plan. In *Darden,* Judge Murnaghan reviewed a plan with language that appears to be identical to the language of the plan presently before this Court, including the EE Arrangement and the DCIC Plan language. The court first considered whether plaintiff was an employee within the meaning of ERISA and concluded that the record was insufficiently developed to make that determination. *Id.* at 707. Next, the court considered defendants' arguments that even if the plaintiff *was* an employee within the meaning of ERISA, the plan was not a pension plan within the meaning of ERISA. The court reviewed ERISA regulations which provide that a severance pay plan is not an ERISA plan if, among other requirements, all payments to an employee are completed within 24 months after the employee's termination. *See* 29 C.F.R. 2510.3–2. The court concluded that the Agent Security Compensation Plan (which includes both the DCIC Plan and EE Arrangement) was not a severance pay plan for purposes of ERISA because plaintiff could elect to receive the benefits in the form of a life annuity and because all payments to plaintiff under the DCIC Plan would not have been completed within 24 months. 796 F.2d at 708. The court remanded the case in order that the district court could consider whether the plan fit within an ERISA exception for plans that are unfunded and applicable only to a select group of highly compensated employees. *Id.* at 708–09; *see* 29 U.S.C. § 1051(2) (1982).

The *Darden* court did not consider the argument raised by defendants here, that the DCIC Plan is a buyout arrangement like the arrangement in *Fraver*. After considering *Darden* and the two Ohio district opinions that held that the DCIC Plan was an ERISA pension plan, the Court will reject defendants' argument and join these courts in concluding that the DCIC Plan *is* a pension plan within the meaning of ERISA. Given that agents under the agreement could accrue benefits under the

Plan for a lifetime, after an initial five year period, the Court cannot accept defendants' argument that the DCIC Plan merely pays agents a final "commission." In this case, plaintiff accrued nearly $95,000 over a ten-year period under the Plan and it is this court's view that this money represented retirement income subject to the protections of ERISA. *See* 29 U.S.C. § 1002(2)(A). Accordingly, the Court will deny the motion to dismiss Counts I and III on the ground that the DCIC Plan is a pension plan as defined by ERISA.

### III.

■ The defendants' argument that the suit is barred by a "statute of limitations" agreed to in the agency agreement assumes that plaintiff's cause of action accrued on April 18, 1984, when he sent Nationwide his letter of resignation. The agency agreement provides that actions brought under it must be commenced and *process must be served* within three years of the accrual of the cause of action. Plaintiff terminated his relationship with defendants on April 18, 1984, and he filed the suit on April 16, 1987, serving process on May 6, 1987. Defendants contend that the cause of action arose no later than April 18, 1984, when plaintiff was terminated, and that the service of process on May 6, 1987, renders the suit untimely.

Plaintiff points out that his initial benefit payment was not due until June 17, 1984, and that he was not advised until July 18, 1984, by defendants that they would not be paying him any benefits. He contends that the cause of action therefore did not accrue until either June 17, 1984, when his payments were due or on July 18, 1984 when he learned he would not be receiving benefits. The Court agrees.

Because this ERISA action is analogous to a breach of contract action, the rules for determining when a cause of action accrues as a startup point for a limitations period under ERISA are adopted from state rules for contract actions. Thus the Fourth Circuit has held not only that Maryland's three-year statute of limitations for contract actions applies, but also that the limitation period began to run when defendants informed the plaintiff that he would be receiving no benefits. *Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975 (4th Cir.1987). Moreover, the court concluded that defendants' violation of the ERISA vesting provisions, "like an analogous breach of contract action, constituted a series of successive breaches of the non-forfeiture provisions of ERISA." *Id.* at 982. Contrary to defendants' argument in this case, their letter of May 1, 1984, to Petr informing him that they would enforce their agreement with him was not notice to him that they would not be paying benefits over to him. In fact, any such implication was contradicted by defendants' letter of May 3, 1984, which asked plaintiff whether he wanted taxes withheld from his benefit payments, and the continued receipt thereafter by Petr of commissions earned before his departure.

Based on the same reasoning for rejecting the limitations defense on the ERISA counts, the Court will reject defendants' limitations argument directed toward plaintiff's common law contract claim for commissions in Count IV.

For the foregoing reasons, therefore, it is hereby ORDERED this 4th day of May, 1989, by the United States District Court for the District of Maryland, that:

1. Defendants' motion to dismiss will be granted as to Count II and denied as to all other Counts; and

2. The Clerk is directed to mail a copy of this Memorandum and Order to all counsel of record.