Robert T. DARDEN, Plaintiff–Appellee,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY; Nationwide Mutual Fire Insurance Company; Nationwide Life Insurance Company, Defendants–Appellants.

Robert T. DARDEN, Plaintiff–Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY; Nationwide Mutual Fire Insurance Company; Nationwide Life Insurance Company, Defendants–Appellees.

Nos. 89–2759, 89–2760.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1990.

Decided Jan. 7, 1991.

Rehearing and Rehearing En Banc Denied Feb. 22, 1991.

George Robinson Ragsdale, argued (Craig G. Dalton, Jr., Leboeuf, Lamb, Leiby & Macrae, Raleigh, N.C., Margaret M. Richardson, W. Mark Smith, Sutherland, Asbill & Brennan, Washington, D.C., on briefs), for defendants-appellants.

Marion G. Follin, III, Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, Greensboro, N.C., for plaintiff-appellee.

Before HALL, MURNAGHAN, and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Robert T. Darden, a former insurance agent for Nationwide Mutual Insurance Company (Nationwide), sued Nationwide for payments under the latter's post-employment compensation plan—Agent Security Compensation Plan (the ASCP). Nationwide had refused to pay Darden ASCP benefits after his termination because he had violated his agreement "not to compete" with Nationwide, but Darden contends that the Employee Retirement Income Security Act (ERISA) governs his contract and that the vesting requirements of ERISA prevent enforcement of the ASCP forfeiture provisions against him. The district court held that Darden was an "employee" for purposes of ERISA, but that only part of the ASCP qualified under the ERISA definition of a pension plan. It held Darden could recover that portion of the ASCP. Nationwide appeals and Darden cross-appeals. We affirm.

## I.

This case has been in litigation for seven years and we have it now for the second time. The facts were fully related in our first opinion, *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir.1986) (*"Darden I"*), and need only be summarized here. Darden worked for Nationwide from September 1960 until November 1980. Darden's contract with Nationwide provided for his participation in a retirement and deferred compensation plan for insurance agents—the ASCP. The ASCP has two components—a Deferred Compensation Incentive Credit Plan and an Extended Earnings Plan. The Deferred Compensation Plan was funded as an agent retirement plan by Nationwide's annual contributions based on an agent's earnings from original and renewal fees for insurance policies. Under the Extended Earnings Plan, Nationwide agreed to pay agents upon their retirement, termination, death or disability, a sum equal to their earnings from renewal fees over the prior twelve months.

The agency agreement, however, provided that Nationwide's obligation to pay benefits under the ASCP would terminate if an agent engaged in certain insurance businesses, in competition with Nationwide, within one year of the cancellation of the agent's agreement with Nationwide and within a twenty-five mile radius of the agent's former business location. Nationwide's obligation would also cease if the agent, at any time after the cancellation of his agency agreement with Nationwide, induced a Nationwide policyholder to cancel an insurance contract with Nationwide. Further, the agency agreement between Nationwide and the agent provided that either party had the right to cancel the agreement at any time after written notice had been given.

Nationwide terminated its agency contract with Darden in November 1980. One month later, Darden opened a new business as an independent insurance agent and proceeded to represent various competitors of Nationwide. Moreover, Darden operated the new business at the same location he

had previously used as a Nationwide agent. Consequently, Nationwide notified Darden that it would not pay him any of the benefits to which he otherwise would have been entitled under the ASCP. In November 1983, Darden brought suit under ERISA to recover the benefits.

Under ERISA, benefits from a pension plan become nonforfeitable after the plan has vested.[1] *See* 29 U.S.C. § 1053(a); *Petr v. Nationwide Mut. Ins. Co.*, 712 F.Supp. 504, 506 (D.Md.1989). The nonforfeitability provision protects only "employees" and then only if the benefit arrangement is an employee "pension benefit plan." *See* 29 U.S.C. §§ 1132(a), 1002(2)(A), 1002(7); *Wolcott v. Nationwide Mut. Life Ins.*, 884 F.2d 245, 250 (6th Cir.1989). In May 1985, the district court granted Nationwide's motion for summary judgment on the ground that Darden did not qualify as an "employee" within the scope of ERISA and, therefore, had no enforceable rights against Nationwide under ERISA. On appeal, we vacated the district court's judgment, holding that the traditional common-law test for determining the meaning of "employee," which the district court had applied, was "not the appropriate standard" to apply in a case arising under ERISA. *Darden I*, 796 F.2d at 706. Our *Darden I* opinion set forth a three-part test for determining whether an individual is an employee as contemplated by ERISA. To qualify as an "employee," a claimant must establish: (1) that he had a reasonable expectation that he would receive the benefits, (2) that he relied on this expectation, and (3) that he lacked the economic bargaining power to contract out of the forfeiture provisions. *Id.* at 706–07. We held that the first prong of the three-part test had been satisfied, concluding that by "establishing a comprehensive retirement benefits program for its insurance agents, Nationwide created a reasonable expectation on Darden's part that benefits would ultimately be paid to him." *Id.* at 707. However, the case was remanded for further factual findings relating to the second and third prongs.

On remand, the district court found that Darden both relied on the benefits plan and lacked sufficient economic bargaining power to contract out of the forfeiture clauses. It concluded that Darden was an "employee" under ERISA. The district court also found that the Deferred Compensation Plan was a "pension plan" for purposes of ERISA and awarded Darden the benefits he had accrued under that component of the ASCP. The court, however, in a summary judgment ruling held that the Extended Earnings Plan was not a "pension plan" and accordingly denied Darden those benefits.

## II. Darden's Status as an Employee

■ Since we had determined in *Darden I* that Darden had satisfied the first prong of the three-part "employee" test, the chore on remand was to decide if Darden satisfied the other two prongs of the *Darden I* definition of "employee." Our *Darden I* opinion, however, did not leave the page on the remainder of the definition completely blank. We outlined the parameters of the reliance requirement, stating that persons within the protected class must have relied on that expectation of retirement payments by remaining for "'long years,' or a substantial period of time, in the 'employer's' service, and by foregoing other significant means of providing for their retirement." *Darden I*, 796 F.2d at 706. We found that Darden's many years of service and his having foregone equity (since upon his termination all rights revert back to Nationwide) evidenced his reliance. *Darden I*, 796 F.2d at 707. However, we also stated that there was no indication in the record as to whether Darden pursued other methods of providing for his retirement which would have significantly reduced his reliance on the Nationwide benefit plan or whether a failure to make such alternative provisions would have been reasonable in light of the common practices of other Nationwide insurance agents. *Id.*

---

1. The vesting period is determined by one of three methods. *See* 29 U.S.C. §§ 1053(a)(2)(A), 1053(a)(2)(B), and 1053(a)(2)(C). Under any of the three methods, Darden's agreement vested. *Darden I*, 796 F.2d at 703 n. 1.

The district court found that Darden had pursued alternative means of providing for his retirement. Darden had eight life insurance contracts worth $22,300 in 1980 and he had approximately $60,000 in mutual funds and cash deposits. Finally, Darden had an annuity with a cash surrender value in 1980 of $9,400 and IRA investments totalling $8,402. However, the district court concluded that the these amounts "did not significantly reduce [Darden's] reliance" on the benefits plan and that Darden satisfied the second prong of the definition because he had relied on his benefit plan.

The district court also found that Nationwide explicitly encouraged its agents to rely on the ASCP as a means for providing for their retirement. An audio-visual program, prepared by Nationwide in 1980 to explain the ASCP to its agents, stated:

> Your [Deferred Compensation Plan] is a foundation upon which to build a total retirement plan. Along with such plans as HR–10's and IRA's, it can provide a more-than-adequate retirement income. The other part of the foundation is Extended Earnings.

The court found that Darden, like most Nationwide agents, did not invest in the Nationwide Retirement Plan (the HR–10 Plan) and that over forty percent of Nationwide agents had neither an IRA nor an HR–10 Plan. It concluded that, in light of Nationwide's explicit encouragement and the common practices of other Nationwide agents, Darden's reliance on the ASCP was "reasonable."

On appeal, Nationwide argues that the three-prong test outlined in *Darden I* is inappropriate and that this court, like other courts of appeals have done, should determine an employee's status under ERISA according to common-law principles. *See Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 250–51 (6th Cir.1989); *Holt v. Winpisinger*, 811 F.2d 1532, 1538 n. 44 (D.C.Cir.1987). That, however, is an argument wasted on this panel, for *Darden I* is, of course, controlling precedent in this circuit.

Nationwide also contends that the district court's finding that Darden relied on the plan was clearly erroneous. It argues that Darden was a self-reliant entrepreneur, wholly responsible for his current income, and not a financial "dependent" of Nationwide. Concomitantly, it urges that the other advantages of Nationwide affiliation, such as the quality of insurance offered by Nationwide, competitive premium rates and name recognition, provided the true inducement for Darden's services. Nationwide also stresses that Darden actively pursued a number of financial arrangements that significantly reduced any reliance on the ASCP, and that any failure to make alternative provisions would have been unreasonable in light of the common practices of other Nationwide agents. Finally, in this factual context, Nationwide argues that the district court erred in limiting its consideration of Darden's alternative retirement arrangements to formal savings plans and instead should have also considered the personal assets accumulated by an individual during his working lifetime.

Several of Nationwide's contentions, such as the inducement to work for Nationwide and Darden's alleged status as an independent entrepreneur, have little to do with the relevant inquiry—whether Darden relied on these benefits. Nationwide's other contentions challenge the factual findings of the district court and, after a thorough review of the record, we cannot conclude that the findings were clearly erroneous.

Concerning the third prong of the employee test, the district court found that there was a "significant" disparity in bargaining power between Nationwide and its agents. We agree. Although Nationwide received input from its agents through the Agent Company Advisory Council, Nationwide did not obligate itself to heed such advice. The record indicates that Nationwide specifically rejected proposals by Nationwide agents to change the forfeiture clauses. In fact, Nationwide never suggests that Darden had sufficient economic bargaining power. Consequently, the district court correctly concluded that Darden

"lacked sufficient economic bargaining power to obtain the contractual right to nonforfeitable retirement benefits from Nationwide."

In sum, we agree with the district court's conclusion that Darden was an employee under ERISA.

### III. The Deferred Compensation Plan

The protections flowing from "vesting" under ERISA apply only to a "pension plan." "Pension plan" and "employee pension benefit plan" are defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> > (i) provides retirement income to employees, or
> >
> > (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

The Deferred Compensation Plan is financed through contributions made by Nationwide on the agent's behalf to a group annuity fund. The contribution for each agent is based upon a percentage of the original and renewal fees which he has earned. The agent is eligible to participate in the plan after completion of five years of service. A plan participant may elect to receive early reduced deferred compensa-

tion benefits at his termination upon reaching age 50 with the percentage of benefits payable gradually increasing up to age 60. Benefits are paid over a period of three to ten years or as a life annuity.

Darden elected to have his benefits paid in the form of a life annuity. At the time of his termination in 1980, Darden had accumulated deferred compensation incentive credits totalling $28,664.56. These credits were to be deferred until Darden's 60th birthday on June 1, 1994, when lifetime monthly payments would commence on the basis of annuity rates then in effect. The monthly amount would have been approximately $205.

Based on these facts, the district court concluded that Nationwide's Deferred Compensation Plan "provides retirement income to employees and is an employee pension benefit plan under ERISA." Nationwide disagrees, contending that the Deferred Compensation Plan was not intended to serve as a pension plan but that it was designed to offer an incentive to agents during their working careers. For that reason, Nationwide points out, the plan "disproportionately reward[s]" those persons who generate more sales and therefore earn greater commissions.

■ We agree with the district court that the Deferred Compensation Plan represented an ERISA "pension plan," which provided retirement income to employees or resulted in the deferral of income extending beyond the termination of employment.[2] Nationwide represented that the Deferred Compensation Plan was a retirement plan. Nationwide's own witnesses acknowledged that one of the purposes of the Plan was to provide retirement benefits

---

**2.** In addition to the court below, three other district courts have reached similar conclusions concerning the plan we consider here. *See Plazzo v. Nationwide Mut. Ins. Co.,* 697 F.Supp. 1437, 1450 (N.D.Ohio 1988) ("[i]n view of the benefit accrual and distribution features of the Deferred Compensation Plan, the court concludes that it provides retirement income to employees and is an employee pension benefit plan under ERISA"), *rev'd on other grounds,* 892 F.2d 79 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 370, 112 L.Ed.2d 332 (1990); *Wolcott v. Nation-*

*wide Mut. Ins. Co.,* 664 F.Supp. 1533, 1538 (S.D. Ohio 1987) ("[t]he Court concludes that the Deferred Compensation Plan provides retirement income to employees and is an employee pension benefit plan under ERISA"), *rev'd on other grounds,* 884 F.2d 245 (6th Cir.1989); *Petr v. Nationwide Mut. Ins. Co.,* 712 F.Supp. 504, 507 (D.Md.1989) ("the Court ... join[s] these [other] courts in concluding that the [Deferred Compensation] Plan is a pension plan within the meaning of ERISA") (emphasis omitted).

and its audio-visual suggested the same. Darden, like other Nationwide agents, considered the payments as part of their retirement scheme.[3]

## IV. The Extended Earnings Plan

■ The Extended Earnings Plan compensates an agent by paying him a sum equal to his earnings from renewal fees over the prior twelve months. The district court, basing its decision largely on our holding in *Fraver v. North Carolina Farm Bureau Mut. Ins. Co.*, 801 F.2d 675 (4th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987), held that the Extended Earnings Plan did not constitute a pension plan under ERISA. In *Fraver*, we addressed a benefits plan similar to the Extended Earnings Plan at issue in the instant case. In *Fraver*, as here, the insurance company agreed to pay an amount equal to the renewal commissions of the final twelve months following termination of service. In concluding that such an agreement did not constitute a pension plan, we stated:

> The post-termination benefits are calculated on the basis of the agent's commissions for the prior year and, in that respect, are like a final commission, paid over an extended term.

> . . . .

> The amount of the payment is tied to only one factor, the amount of business in the last year prior to termination. Finally, the payments are recouped from the individual's successor. In sum, the benefits are in the nature of a buy-out in which the departing agent receives payments based on what he leaves behind in the way of business for his successor. If the departing agent goes into competition with his successor, he is destroying

the resource that would be used to pay him.

*Fraver*, 801 F.2d at 678.

On his cross-appeal, Darden contends that the Extended Earnings Plan, like the Deferred Compensation Plan, is a pension plan. He argues that the ASCP is a single plan and if we hold that the Deferred Compensation Plan is a pension plan we likewise must find the Extended Earnings Plan to be a pension plan. We disagree. While both the Deferred Compensation Plan and the Extended Earnings Plan are components of a single plan, they have distinct purposes, employ distinct terms and impose distinct obligations. The district court did not err in analyzing the plans separately.

Darden relies on *Plazzo v. Nationwide Mut. Ins. Co.* in support of his position. In *Plazzo*, an Ohio federal district court held that an Extended Earnings Plan, such as the one at issue in the instant case, is not a "buy-out," but rather a pension plan. *Plazzo*, 697 F.Supp. at 1450–51. Darden impliedly requests that we discard the holding in *Fraver* and adopt the position taken by the court in *Plazzo*. However, two other district courts, analyzing the same issue, concluded that an Extended Earnings Plan is not a pension plan under ERISA. *See Petr*, 712 F.Supp. at 507; *Wolcott*, 664 F.Supp. at 1539. More importantly, the Extended Earnings Plan at issue here closely parallels the benefit agreement in *Fraver* and the outcome here is controlled by that precedent.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.

---

**3.** In *Darden I*, we also directed the district court to consider whether the ASCP fell within an ERISA exception, which exempts any plan which is unfunded and applicable only to a select group of highly compensated employees. *Darden I*, 796 F.2d at 708–09; 29 U.S.C.

§ 1051(2). On remand, the district court held that while the Deferred Compensation Plan was unfunded, it did not apply to a select group of highly compensated employees. On appeal, Nationwide does not contest this conclusion.