Robert T. DARDEN, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company and Nationwide Life Insurance Company, Appellees.

No. 85–1623.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1985.

Decided July 15, 1986.

Rehearing and Rehearing En Banc
Denied Aug. 28, 1986.

Marion G. Follin, III (Smith, Patterson, Follin, Curtis, James & Harkavy, on brief) for appellant.

Walker Y. Worth, Jr. (Russ, Worth & Cheatwood, on brief), and Craig G. Dalton, Jr. (Moore, Ragsdale, Liggerr, Ray & Foley, P.A., on brief), for appellees.

Before MURNAGHAN, SPROUSE and SNEEDEN,* Circuit Judges.

MURNAGHAN, Circuit Judge:

Robert Darden appeals from the decision of the United States District Court for the Eastern District of North Carolina granting summary judgment for defendant Nationwide Mutual Insurance Company on Darden's claim for retirement benefits on the basis of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## I.

From 1962 until November 1980, Darden acted as an insurance agent for Nationwide Insurance Company in Fayetteville, North Carolina. During that period, Darden represented Nationwide exclusively. While Darden enjoyed a substantial degree of freedom to operate his agency as he chose, his freedom was limited by a number of requirements imposed by Nationwide. Darden was compensated through commissions, rather than through a fixed salary.

The relationship between Darden and Nationwide was governed by a series of eight successive agency contracts. Each of the agency contracts provided for Darden's participation in a retirement and deferred compensation plan for insurance agents referred to as the "Agent's Security Compensation Plan." The Agent's Security Compensation Plan consisted of two programs

* The Honorable Emory M. Sneeden resigned from the court before the case was decided. He did not participate in the decision.

known as the "Deferred Compensation Incentive Credit Plan" and the "Extended Earnings Plan." Under the Deferred Compensation Incentive Credit Plan, Nationwide maintained a retirement account for Darden and annually credited to that account a sum based on Darden's earnings from original and renewal fees for insurance policies. Under the Extended Earnings Plan, Nationwide agreed to pay Darden, upon his retirement, termination, death or disability, a sum equal to his earnings from renewal fees over the prior twelve months.

The agency agreements also provided that Nationwide's obligation to pay benefits under the Agent's Security Compensation Plan would terminate if a former agent engaged in the fire, casualty, health, or life insurance business, in competition with Nationwide, within one year of the cancellation of the agent's agreement with Nationwide and within a twenty-five mile radius of the former business location of the agent. Nationwide's obligation would also cease if the former agent, at any time after the cancellation of his agency agreement with Nationwide, induced a Nationwide policyholder to cancel an insurance contract with Nationwide. The agency agreements between Nationwide and Darden provided further that either party had the right to cancel the agreement at any time after written notice.

Nationwide exercised its right to terminate the agreement on November 20, 1980. One month following the termination of the agreement, Darden opened a new business as an independent insurance agent, representing various competitors of Nationwide.

He operated the new business at the same location he had previously used as a Nationwide agent. Nationwide then notified Darden that it would not pay him any of the benefits to which he otherwise would have been entitled under the Agent's Security Compensation Plan.

The most recent statement which Darden had received prior to his termination indicated that as of December 31, 1979, he had accumulated $28,664.00 in the Deferred Compensation Plan and $65,706.00 in the Extended Earnings Plan. Under the election which Darden had on file with Nationwide at the time of his termination, he was entitled to approximately $490.00 per month for the remainder of his life, to begin within sixty days after his termination, under the Extended Earnings Plan. He was also entitled to approximately $120.00 per month for the remainder of his life, to begin at age 50, under the Deferred Compensation Incentive Plan. At his termination in 1980, he was 46 years of age.

Darden filed the present action on November 8, 1983, seeking to benefit from the terms of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Under ERISA, an employee's right to receive retirement benefits from an employer-sponsored retirement plan must vest, thereby becoming nonforfeitable, after a period of time to be determined according to one of three alternative methods. 29 U.S.C. § 1053(a).[1] Darden based his claim to relief on § 502(a) of the Act, 29 U.S.C. § 1132(a), which provides that a participant in or a beneficiary of an employee retirement income security plan may bring

---

1. Under the first method, the plan must accord an employee a non-forfeitable right to 100% of his accrued pension benefits upon completion of ten years of service with the employer. 29 U.S.C. § 1053(a)(2)(A). Under the second method, the plan must provide the employee with a nonforfeitable right to a percentage of accrued benefits increasing with each year of service, beginning with 25% of accrued benefits after five years' service and ending with 100% after fifteen years. 29 U.S.C. § 1053(a)(2)(B). Under the third method, the employee's nonforfeitable percentage of accrued benefits increases with respect to both the employee's years of service and his or her age. Fifty percent of the employee's accrued benefits must become nonforfeitable when the employee has completed at least five years of service and the sum of the employee's age and years of service equals or exceeds 45. One hundred percent must become nonforfeitable when the employee has worked for the employer for at least ten years and the sum of the employee's age and years of service equals or exceeds 55. 29 U.S.C. § 1053(a)(2)(C).

Under any of the three alternatives, the Agent's Security Compensation Plan for Darden had vested, immune from forfeiture, if Darden was an employee.

a civil action to enforce the provisions of the Act and to recover benefits due to him. Darden accordingly sought to enforce the Act's nonforfeitability requirements and to recover the benefits claimed to be due to him under the provisions of Nationwide's Agent's Security Compensation Plan.

Following discovery, both parties moved for summary judgment. The matter was referred to a magistrate, who recommended that summary judgment be granted for Darden. The district court rejected the magistrate's recommendation and granted summary judgment for Nationwide on the ground that Darden did not qualify as an employee within the scope of ERISA and therefore had no enforceable rights against Nationwide derived from that Act. Darden now appeals from the district court's decision.

## II.

To maintain an action based on § 502(a) of ERISA, 29 U.S.C. § 1132(a),[2] Darden must qualify as a "participant" in an employee benefit plan.[3] The Act defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which

2. Section 502(a) of ERISA, 29 U.S.C. § 1132(a), provides in relevant part:

 (a) **Persons empowered to bring a civil action**
 A civil action may be brought—
 (1) by a participant or beneficiary—

 . . . . .

 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

 . . . . .

 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

3. While an action may also be brought by a "beneficiary," 29 U.S.C. § 1132(a)(1), (3), or by a "fiduciary," 29 U.S.C. § 1132(a)(3), Darden makes no claim to a right of action in either of those capacities. A "beneficiary," for the pur-

covers employees of such employer..." 29 U.S.C. § 1002(7). Thus, Darden's right to pursue an ERISA-based claim against Nationwide depends upon whether he may properly be treated as an "employee" for the purposes of ERISA, or whether he falls into the independent contractor category.

The statute itself provides little guidance concerning the interpretation to be given the term "employee" in the ERISA context. "Employee" is defined simply as "any individual employed by an employer." 29 U.S.C. § 1002(6). Perhaps as a result of this lack of explicit statutory guidance, the few courts that have considered the question have looked to definitions of the employer-employee relationship developed in other areas of law.

One such approach involves the application of the traditional common-law standard for identifying the relationship of master and servant. *See Short v. Central States Pension Fund,* 729 F.2d 567 (8th Cir.1984); *Richardson v. Central States Pension Fund,* 645 F.2d 660 (8th Cir.1981); *Wardle v. Central States Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).[4] The principal element of the com-

poses of ERISA, is a person other than one whose service resulted in the accrual of the benefits, but who is designated as the recipient of benefits accrued through the service of another. 29 U.S.C. § 1002(8). Darden does not claim to be the beneficiary of benefits earned by someone else. Nor is there any indication in the record that Darden had any fiduciary responsibilities with respect to the Nationwide plan.

4. It is not clear, however, that either the Seventh or Eighth Circuit intended to apply the common-law test to the interpretation of the term "employee" as it is used in the statute itself. Rather, all three of the cases appear to have involved only claims that the plaintiffs were entitled to benefits under the terms of the particular pension plan alone, without raising an additional question as to the validity of the pension plan under ERISA. Accordingly, both courts interpreted the term "employee" as it was used in the pension plan document, not in the statute. That document, which was the same in all three cases—because all three cases involved the Central States Pension Fund—provided that

mon-law standard is the extent of one party's right to direct and control the performance of the other. *Short v. Central States Pension Fund,* 729 F.2d 567, 572 (8th Cir. 1984); *Restatement (Second) of Agency* § 220 (1957); *Prosser and Keeton on Torts,* § 70 at 501 (5th ed. 1984). Many factors are considered in determining whether there is such a right to control, including the degree of one party's supervision of the details of the other's works; whether the two parties are engaged in distinct businesses or occupations; who supplies the place and instrumentalities of the work; the duration of the relationship between the parties; the method of payment; and other factors.[5]

Under such traditional common law principles, Darden most probably would not qualify as an employee. Darden was relatively free to run his business as he chose. Darden was able to exercise his independent judgment as to the time, place and manner of soliciting and selling insurance and serving policy holders. He was able to hire and fire clerical employees without securing Nationwide's approval, though he could not on his own hire additional insurance agents. On the other hand, Nationwide monitored Darden's operations and imposed several restrictions on his activities. He was instructed not to provide price quotations over the telephone to customers. He was also directed to collect a full six months' premium for automobile insurance at the inception of the policy, and was not permitted to allow the customer to pay part of the premium after 45 days. He was required to ask questions of automobile insurance applicants in a manner in line with a certain Nationwide-mandated procedure, to set up a claims log file, to review his files and to contact policy holders 60 days before the renewal date of a policy, to have his secretaries attend training sessions sponsored by Nationwide, to inspect personally the automobiles of applicants for automobile insurance, and to meet personally with every youthful male applicant for automobile insurance. While Darden was not required to prepare regular reports for Nationwide concerning his activities, he was subject to unannounced audits by Nationwide's accountants. Nationwide encouraged Darden, but did not compel him, to attend training seminars offered by Nationwide.

Darden was compensated through commissions, rather than through a salary. He paid his business expenses out of his commissions, including office maintenance and utilities and the salaries of his clerical staff. Darden owned the building housing his agency's offices and the furniture used there, as well as an automobile maintained for business purposes. He did not, however, own his business in a complete sense, because he was not entitled to sell the business as a going concern. Under the terms of the agency agreements between Darden and Nationwide, the good will and the value associated with the servicing of

its terms were to be construed according to Illinois law, and that the common-law definition of the master-servant relationship should control. Thus, in applying common-law principles, the Seventh and Eighth Circuits appear to have been doing no more than giving effect to the intention of the parties to that particular pension plan agreement without considering whether ERISA might preempt or override the intention of the parties.

**5.** The District Court for the Western District of Oklahoma took a slightly different approach in *Soloway v. New York Life Insurance Co.,* No. 77–0849–D, slip. op. (W.D.Okla.1978). Relying on cases which develop the definition of "employee" in the context of other federal statutes, such as the National Labor Relations Act and Title VII of the Civil Rights Act of 1964, rather than on the common law, the district court adopted a six-factor test which is similar in application to the common-law standard. The six factors included: (1) the extent to which the services in question are an integral part of the "employer"'s business; (2) the amount of the "employee"'s investment in facilities and equipment; (3) the nature and degree of control retained or exercised by the "employer"; (4) the "employee"'s opportunities for profit or loss; (5) the amount of initiative, skill, judgment or foresight required for the success of the claimed independent enterprise; and (6) the permanency and duration of the relationship. Having weighed the matter in that light, the Oklahoma district judge concluded, for the purposes of the case before the court, that the insurance agent concerned was not an employee for ERISA purposes.

existing policies reverted to Nationwide upon the termination of the agency relationship. In their dealings with each other, Darden and Nationwide referred to their relationship as one between independent contractors. Darden was not entitled to receive certain benefits reserved for Nationwide "employees," such as life insurance, health insurance, and paid annual leave. Darden received his commissions without deduction by Nationwide for income taxes or other charges.

■ We conclude, however, that the common-law test for the relationship of master and servant is not the appropriate standard for application here. The Supreme Court has emphasized on two occasions that the definition of "employee" should be tailored to the purposes of the statute being construed. *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947) (defining "employee" for the purposes of the Social Security Act); *NLRB v. Hearst Publications*, 322 U.S. 111, 120–29, 64 S.Ct. 851, 855–59, 88 L.Ed. 1170 (1944) (defining "employee" for the purposes of the National Labor Relations Act). In both cases, the Court rejected the argument that the term "employee" as used in federal statutes should be interpreted in accordance with the common-law standard. The Court pointed out that the common-law test, which emphasizes the elements of supervision and control, was developed for the purpose of determining whether the extent of one person's control over the actions of another was sufficient to justify the imposition of vicarious liability on the controlling person for the wrongful acts of the person subject to control. *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468; *Hearst*, 322 U.S. at 129, 64 S.Ct. at 859. Instead, the Court explained, the content of the term "employee" in the context of a particular federal statute is "to be construed 'in the light of the mischief to be corrected and the end to be attained.'" *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468, *quoting Hearst*, 322 U.S. at 124, 64 S.Ct. at 857. In interpreting statutory language so as to define the class of persons protected by the statute, a court must take as its "primary consideration" whether the inclusion of the disputed category of persons would effectuate the "declared policy and purposes" of the statute. *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468; *Hearst*, 322 U.S. at 131–32, 64 S.Ct. at 860–61.

The purposes of ERISA are explicitly set forth in § 2 of the Act, 29 U.S.C. § 1001. Congress was concerned that "many employees with long years of employment are losing anticipated retirement benefits." Because employee benefit plans "have become an important factor affecting the stability of employment and the successful development of industrial relations," Congress felt that it was desirable in the interests of the free flow of commerce, as well as in the interests of individual employees and their beneficiaries, to enact minimum standards "assuring the equitable character of such plans and their financial soundness."

■ This statement of congressional purpose provides us with useful guidance in fashioning a standard to be used in determining whether an individual who does not fit within the traditional concept of employee status should nonetheless be considered an employee in the context of ERISA. The protected class described in the statement of purpose encompasses, first of all, persons whose retirement benefits were "anticipated." In other words, the "employer" or sponsor of the pension plan must have taken some action that created a reasonable expectation on the "employees'" part that benefits would be paid to them in the future. Second, persons within the protected class must have relied on that expectation by remaining for "long years," or a substantial period of time, in the "employer's" service, and by foregoing other significant means of providing for their retirement. It is that category of persons—those for whom the forfeiture of accrued employee benefits results in financial hardship during retirement—that was the focus of congressional concern. Finally, implicit in the congressional statement of purpose is the recogni-

tion that the persons to be aided by the statute lacked sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits. Had they possessed such bargaining power, statutory reform would have been unnecessary.[6] Evidence of the extent of the "employer's" control may, of course, be relevant to a determination of relative bargaining power.

Viewed from that perspective, Darden's case appears substantially stronger. By establishing a comprehensive retirement benefits program for its insurance agents, Nationwide created a reasonable expectation on Darden's part that benefits would ultimately be paid to him.[7] There is also evidence in the record indicating Darden's reliance on that expectation. He remained with Nationwide for eighteen years—a period which exceeds the length of service prescribed by Congress for the vesting of benefits under any of the three methods described in § 1053(a). Moreover, Darden was obliged to forego at least one alternative method of providing for his retirement that would normally have been available to an independent contractor: because much of the value of a Nationwide agency reverted to Nationwide upon the agent's termination, Darden was not able to build up equity in his business which could eventually be transformed into cash through the sale of the business. On the other hand, there is no indication in the record as to whether Darden pursued other methods of providing for his retirement which would have significantly reduced his reliance on the Nationwide benefit plan. Nor is there any evidence as to whether a failure to make such alternative provisions would

have been reasonable in light of the common practices of other Nationwide insurance agents. Finally, the evidence concerning the respective bargaining strength of the parties is incomplete.

■ It appears that the parties have oriented their factual presentations toward the common-law test of master and servant, a standard which we now reject in favor of one focusing on the objectives and purposes of ERISA. Applying the approach we now endorse, we are not satisfied that the facts have been sufficiently developed to insure ripeness for decision at the summary judgment stage. Further factual development relevant to the purposes of ERISA, either by additional materials submitted in support of a renewed motion for summary judgment, or by trial, would be appropriate. We conclude that the district court's focus of attention on the common law master/servant issue did not result in a decision properly attuned to the pertinent considerations.

### III.

Nationwide further contends that, even if Darden is assumed to be an employee for the purposes of ERISA, the district court's judgment may, nevertheless, be upheld on other grounds. Nationwide points out that the nonforfeitability requirements of 29 U.S.C. § 1053(a) apply only to "pension plans" and not to other forms of employee benefit plans. Thus, Nationwide's provision for forfeiture upon a terminated agent's entry into competition with Nationwide is invalid only if Nationwide's Agent's Security Compensation Plan qualified as a "pension plan" within the meaning of the

---

6. The importance of a disparity in economic bargaining power to a determination of employee status was recognized in *Fraver v. North Carolina Farm Bureau Mutual Insurance Co.,* 643 F.Supp. 633, 639–40 (E.D.N.C.1984), where the district court held that certain insurance agents qualified as "employees" for the purposes of ERISA.

7. Darden's expectations were limited, of course, by the agency agreement's provision, present from the outset, that accrued benefits would be forfeited if Darden were to compete with Nationwide following the termination of his agen-

cy relationship. However, it is precisely that sort of employer-imposed condition on the employee's anticipations that Congress intended to outlaw with the enactment of ERISA. Under ERISA, employee rights must vest after a statutorily defined period; they may no longer remain contingent on the employee's actions. Employers may not circumvent that congressional purpose by arguing that a disappointed beneficiary did not qualify as an employee because his or her expectations were limited by forfeitability provisions.

Act. Nationwide advances two theories in support of its argument that its plan did not so qualify.

■ Nationwide argues, first, that its plan constituted a "severance pay plan." Regulations issued by the Secretary of Labor, pursuant to statutory authority under 29 U.S.C. § 1002(2)(B), provide that a severance pay plan does not qualify as a pension plan for purposes of ERISA if: (1) the severance payments are not contingent upon the employee's retirement; (2) the total amount of severance payment does not exceed the equivalent of twice the employee's annual compensation during the year immediately preceding the termination of his service; and (3) all such payments to any employee are completed within 24 months after the termination of the employee's service. 29 C.F.R. § 2510.3–2. Nationwide's Agent's Security Compensation Plan plainly fails to satisfy the third prong of that test. Under the terms of the plan, Darden was entitled to, and indeed did, elect to receive benefits in the form of a life annuity. Moreover, under the Deferred Compensation Incentive Credit portion of the plan, Darden's benefit payments would begin only when he reached the age of 50—four years after his termination at age 46. Thus, it is manifest that Nationwide's plan did not provide for the completion of payments to Darden within 24 months following his termination.

■ Nationwide also contends that its plan is not subject to the vesting and non-forfeitability requirements of § 1053(a) by virtue of § 1051(2), which exempts from those requirements any plan "which is unfunded and which is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." [8] In the present posture of the case, however, whatever the ultimate disposition may be, the question is not suited for summary judgment disposition, because several disputed issues of fact remain.

First, the parties disagree as to whether Nationwide's plan is funded or unfunded, and both parties have produced evidence to support their respective positions. Nationwide relies on the affidavit of George W. Frink, Nationwide's Vice President for Marketing Services, who has stated that the plan is unfunded. Darden, on the contrary, points to the agents' benefit handbook prepared by Nationwide, which stated that the Deferred Compensation Incentive Credit portion of the plan was funded as benefits accrue, although the Extended Earnings portion of the plan would be funded only upon cancellation of the agent's contract. Darden also points to the deposition of Elton Parker, the personnel director of Nationwide's Raleigh office, who stated that both portions of the plan were funded.

The facts are also in dispute as to whether the Agents' Security Compensation Plan was limited to a "select group" of "highly compensated employees." The term "select group" seems to imply a small percentage of the total number. In *Belka v. Rowe Furniture Corp.,* 571 F.Supp. 1249, 1252 (D.Md.1983), the district court held that a plan which covered only 4.6% of total employees was limited to a "select group." Here, the parties have presented no evidence as to the percentage of Nationwide's total employee complement who participated in the Agents' Security Compensation Plan.

There is also a dearth of evidence as to whether the insurance agents covered by the plan were "highly compensated" in relation to Nationwide's other employees. Nationwide asserts, but has not substantiated, that the average compensation of its agents in 1980 was $44,773, while the average compensation of "all Nationwide employees" in 1980 was $16,510. Even assuming the correctness of those figures, however, a lack of further clarification pre-

---

**8.** We do not accept Darden's contention that our consideration of the argument is improper because the issue was not raised before the magistrate. The argument was sufficiently advanced when it was raised before the district court in Nationwide's Objection to the Magistrate's Memorandum and Recommendations.

vents their intelligent evaluation. We are not told, for example, whether the $16,510 figure is the average of all employees *including* the agents or *excluding* the agents. Nor are we told how the agents' compensation is calculated, or whether it is adjusted so as to be comparable to the compensation paid to salaried employees. Nationwide's comparison may be between apples and oranges. It is clear, then, that disposition by way of summary judgment of the question of exemption under § 1051(2) would be inappropriate.

## IV.

We vacate, rather than reverse, the district court's decision, so that on remand the parties may have an opportunity to structure their factual and legal presentations concerning Darden's status as an employee within the meaning of ERISA in a manner consistent with the approach we have outlined above. Alternatively, or if Darden is found to qualify as an employee, the district court should allow the parties to present further evidence on the question whether Nationwide's plan constituted an unfunded plan for the compensation of a select group of highly compensated employees.

VACATED AND REMANDED.