Stanley R. WAXMAN, et ux, et al.

v.

HARDAWAY CONSTRUCTION COMPANY, INC., et al.

No. 3–85–1066.

United States District Court, M.D. Tennessee, Nashville Division.

March 7, 1988.

Stanley R. Waxman, Memphis, Tenn., pro se.

Douglas Fisher and Thomas M. Pinckney, Jr., Howell, Fisher, Branham & North,

Nashville, Tenn., for defendants Hardaway Const. Co., Inc., Employee Benefit Plan, Charles Hardaway, Hardaway Const. Co., Inc., L. Hall Hardaway, Sr., L. Hall Hardaway, Jr., and American Group Administrators, Inc.

John S. Bryant, Bass, Berry & Sims, Nashville, Tenn., for defendant Lafayette Life Ins. Co.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This is an action brought by Stanley Waxman, his wife, Jean Waxman, and his son, Michael L. Waxman, to recover from the defendants certain medical and hospital expenses pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiffs contend that such payments are due them by reason of their participation in a program providing medical and hospitalization coverage, and life insurance coverage, known as the Hardaway Construction Company, Inc. Employee Benefit Plan (hereinafter referred to as the "Hardaway Plan"). Defendants Hall Hardaway, Sr., Hall Hardaway, Jr., Charles Hardaway, Hardaway Construction Company, Inc., the Hardaway Plan, and American Group Administrators, Inc. (hereinafter referred to as the "Hardaway defendants"), assert two defenses. First, they contend that plaintiffs have no statutory standing to bring this action under ERISA because plaintiffs were never ERISA participants or beneficiaries. Second, they assert that plaintiffs were terminated from the Hardaway Plan for nonpayment of premiums prior to the date upon which the hospital and medical expenses in question were incurred and that plaintiffs were never reinstated after their termination. Defendants Donald Luna and LHC & Associates, Inc. have not answered the complaint and did not appear at trial. Plaintiffs' claims against Lafayette Life Insurance Company, and all issues related to damages, were severed from the trial to determine the liability of the remaining defendants by Order entered July 15, 1987. The first phase of the trial in this matter was tried by the Court, without a jury, on July 15, 1987. This Memorandum constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

The principal characters in this lawsuit are plaintiff Stanley Waxman and defendants Hall Hardaway, Jr., Donald Luna, and Charles Hardaway. Plaintiff Stanley Waxman is a financial consultant with an extensive business background. At one time he was responsible for an insurance program and negotiated insurance contracts with insurers and reinsurers. Defendant Hall Hardaway, Jr., was and is vice chairman of Hardaway Construction Company. He is active in 150 partnerships and ten corporations, including defendant Hardaway Construction Company. He is one of the trustees of the Hardaway Plan. Defendant Donald Luna was a mortgage broker in the business of procuring loans. Defendant Charles Hardaway was the Hardaway Plan's coordinator.

Waxman, Luna, and Hall Hardaway, Jr. first became acquainted in 1980 when Waxman and Luna presented a business proposition to Hall Hardaway, Jr. concerning Poole Truck Line. Hardaway rejected this venture. Subsequently, Waxman and Luna agreed that Waxman would do loan brokering work for Luna on an independent contractor basis.

In early 1982, Hall Hardaway, Jr. agreed to allow Luna and some of his business associates to use office space owned by Hardaway Construction Company. Hardaway hoped that Luna would be able to secure financing for construction projects in which Hardaway was involved. Hardaway also advanced money to Luna and allowed him to use credit cards with the expectation that these sums would be recouped from fees Luna would earn by arranging loans. Neither Luna nor Waxman was ever on the regular payroll of any Hardaway entity.

In the summer of 1982, Luna asked Hall Hardaway, Jr. if Luna and one or two of his associates could participate in the Hard-

away Plan, which provided hospitalization and medical coverage, and life insurance for participants, and afforded them an option to make this coverage available to their dependents upon payment of the premium. Luna agreed to pay for the participation of himself and his associates. Hardaway agreed to permit Luna and his associates to participate, and Waxman was enrolled in the Hardaway Plan on July 1, 1982. Waxman was issued an enrollment card and was given a booklet outlining the benefits available under the plan. Waxman allowed his other health insurance coverage to lapse in reliance upon his status as a participant in the Hardaway Plan.

Waxman viewed his participation in the Hardaway Plan as a gift or "perk." He testified that he did not know and could care less who made the gift. Defendant Charles Hardaway, the Hardaway Plan's insurance coordinator, issued invoices to Luna for premiums due under the Hardaway Plan for Luna and his associates. Hardaway did not send premium notices directly to Waxman.

Waxman, his wife, and his son were participants in the Hardaway Plan beginning June 1, 1982, and all claims submitted by plaintiffs for medical expenses that were incurred from June 1, 1982, until October 31, 1982, were paid by the Hardaway Plan. On July 1, August 1, September 1, and October 1, 1982, however, Charles Hardaway sent Luna invoices advising him that Waxman's payments were delinquent. Hardaway relied on Luna to pay the invoices or give them to Waxman. On August 19, 1982, Pappy Grove, an associate of Luna, sent a notice to Hardaway advising him that "[w]e have contacted Stanley Waxman today requesting his payments due." Waxman denies that he received the invoices Hardaway sent to Luna, but he acknowledges that he received notice from Luna's office that his payments were overdue.

On October 30, 1982, Luna submitted a check to Charles Hardaway to pay premiums owed by himself and Peggy Smith, one of Luna's associates. Luna paid no premium on Waxman's behalf, and no premium

for Waxman had yet been received from any source. As a result, Charles Hardaway terminated Waxman from the Hardaway Plan on October 31, 1982, but Hardaway did not communicate this fact to Waxman immediately. Thereafter, however, Charles Hardaway sent Waxman four notices that he had been terminated from the Hardaway Plan.

First, in January of 1983, Charles Hardaway received bills for medical services rendered to one of Waxman's dependents, but Hardaway returned the bills to Waxman. In a letter sent to Waxman on January 20, 1983, accompanying the return of these bills, Hardaway informed Waxman that coverage had been terminated on October 31, 1982. Waxman denies that he received this letter. Second, on February 1, 1983, in another letter sent to Waxman, Charles Hardaway states: "We are returning claim on Michael Waxman for services rendered after expiration date of November 1, 1982." Waxman also claims he did not receive this letter. Third, in February of 1983, Waxman was told directly by Charles Hardaway that he had been terminated. Waxman acknowledges that Hardaway told him this, but stated that he did not accord it much credence because Luna and Hall Hardaway, Jr., had given him conflicting information. Waxman stated, however, that he knew that Charles Hardaway was the Hardaway Plan insurance coordinator and that when Waxman had claims he submitted them to Charles Hardaway. Fourth, in May of 1983, defendant American Group Administrator's Inc. sent a form to Charles Hardaway that Hardaway then sent to Waxman. In the "Remarks" section of that form, Waxman again was informed that his policy was terminated on October 30, 1982. Waxman acknowledged that he had received this form.

In February of 1983, Luna's corporation, LHC & Associates, Inc., became entitled to $193,000 from Imperial Associates, Inc., a Hardaway development corporation. Charles Hardaway determined that Luna and his associates owed the Hardaway Plan the sum of $3,260.60. Part of this was to go toward the premiums owed by Waxman for the time period ending in October of

1982 when he was covered by the Hardaway Plan. This sum incorrectly included a premium for Waxman for November of 1982. This was the only payment ever made on behalf of Waxman, and it was made four months after he had been terminated from the Hardaway Plan.

On March 3, 1983, Luna asked Hall Hardaway, Jr. to write Waxman a check for $40,000. Luna told Hardaway that Waxman needed the money because his house was being foreclosed upon. Hardaway wrote the check with the understanding that Luna and LHC & Associates, Inc. would be responsible for repayment. Luna testified that the $40,000 paid to Waxman was given as an advance of money that was to be due Luna on a venture in Mississippi.

In June of 1984, Luna called Hall Hardaway, Jr. and asked if Hardaway could help get Michael Waxman admitted into Baptist Memorial Hospital in Memphis. Luna said he would take care of the payments. Hall Hardaway, Jr. said that he did not think that Waxman had any coverage under the Hardaway Plan, but would check to see. Luna later talked to Charles Hardaway and told Hardaway to send the bills for Michael Waxman's hospitalization to Luna. When a person from the Memphis hospital contacted Charles Hardaway, Hardaway told the person to send all bills to him. After receiving the bills, Hardaway forwarded them to Luna.

The Hardaway Plan contained a conversion privilege that allowed certain persons to continue under the plan after terminating their employment with the Hardaway Construction Company, Inc. This provision stated:

### CONVERSION TO AN INDIVIDUAL MEDICAL POLICY

If your coverage ceases because of termination of employment, you are entitled to convert to an Individual Medical Insurance Policy, without evidence of insurability, provided written application and the first premium payment required for the individual policy are made to the Insurance Company within thirty-one (31) days from the date your employment terminated. If you covered your dependents under the Company's Plan on the day your coverage terminated, you may also cover these same dependents under the Individual Medical Insurance Policy. The benefits, premium rates, terms and conditions of the Individual Medical Insurance Policy will be provided you upon request by the Company's personnel office.

## II. CONCLUSIONS OF LAW

Plaintiffs have brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). As an initial matter, the Court must consider whether it has subject matter jurisdiction over plaintiffs' claims. Determining whether plaintiffs have standing is a "threshold question in every federal case [that] determine[s] the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). According to defendants, the Court lacks jurisdiction because ERISA does not confer standing to sue upon Waxman who, at most, was an independent contractor of Hardaway Construction Co., and was never an employee. Defendants reason that because Waxman was not an employee on defendants' payroll, none of the plaintiffs were participants in the Hardaway Plan for purposes of ERISA.

Plaintiffs bring this action under 29 U.S.C. § 1132(a)(1), which provides:

A civil action may be brought—
(1) by a participant or beneficiary—
. . . .
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

The term "participant" is defined as:
[A]ny *employee or former employee* of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such orga-

nization, or whose beneficiaries may be eligible to receive any such benefit.

*Id.* at § 1002(7) (emphasis added). Thus, plaintiffs' right to pursue an ERISA claim against defendants, and this Court's jurisdiction, depend upon whether Stanley Waxman was an "employee" for the purposes of ERISA, or whether he was an independent contractor.

The statute itself provides little guidance concerning the proper interpretation to be given the term "employee" in the ERISA context. "Employee" is defined merely as "any individual employed by an employer." *Id.* at § 1002(6). As a result of this lack of statutory guidance, courts have looked to two definitions of the employer/employee relationship developed in other areas of law. Each of these definitions is now considered separately.

A number of courts have adopted the common-law standard for determining employment status. *See Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 572 (8th Cir. 1984); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980); *Porter v. Commissioner,* 8 Employee Benefits Cas. (BNA) 1374, 1378 (T.C.1987); *Holt v. Winpisinger,* 8 Employee Benefits Cas. (BNA) 1169, 1174–75, 811 F.2d 1532 (D.C.Cir. 1987). In determining the existence of a common-law employer/employee relationship, "the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed in its accomplishment as well as the results to be obtained." *Porter,* 8 Employee Benefits Cas. at 1378 (quoting *Reed v. Commissioner,* 13 B.T.A. 513 (1928), *rev'd,* 34 F.2d 263 (3d Cir.1929), *rev'd,* 281 U.S. 699, 50 S.Ct. 352, 74 L.Ed. 1125 (1930)).

[T]he employer-employee relationship exists when the person for whom the work is done has the right to control and direct the work, not only as to the result accomplished by the work, but also as to the details and means by which that result is accomplished, and that it is the right and

not the exercise of control which is the determining element.

*Wardle,* 627 F.2d at 824 (quoting *NLRB v. Phoenix Mutual Life Insurance Co.,* 167 F.2d 983, 986 (7th Cir.), *cert. denied,* 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395 (1948)). In making this determination, a court must consider all factors that affect the employment relationship.

[T]here is no shorthand formula or magic phrase that can be applied to find an answer, but all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed in light of the pertinent common-law agency principles.

*Wardle,* 627 F.2d at 825 (quoting *NLRB v. United Insurance Co.,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968)).

Under the above common-law principles, plaintiff Stanley Waxman could not be regarded as defendants' "employee." Defendants had no right of control over, and in actuality did not exercise control over, Waxman's activities. All parties regarded Waxman as an independent contractor, and the proof revealed that this characterization was proper as a matter of law. Waxman worked with the Hardaway defendants on occasion to arrange financing for certain business ventures, but defendants did not direct Waxman's activities respecting the manner in which he arranged this financing. Under these circumstances, and in light of the totality of the circumstances surrounding Waxman's working relationship with defendants, the Court must conclude that under the common-law definition of "employee," Waxman was not covered by ERISA.

Other courts have adopted a definition of "employee" that is more closely tailored to the purposes of ERISA. *See Darden v. Nationwide Mutual Insurance Co.,* 796 F.2d 701, 706–7 (4th Cir.1986); *Wolcott v. Nationwide Mutual Insurance Co.,* 664 F.Supp. 1533, 1536–37 (S.D.Ohio 1987). The Supreme Court, in defining "employee" in other areas of law, twice has recognized that the definition of "employee" should be tailored to the purposes of the

statute being construed. *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed.2d 1757 (1947) (defining "employee" for the purposes of the Social Security Act); *NLRB v. Hearst Publications*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (defining "employee" for the purposes of the National Labor Relations Act). The importance of these decisions was recently addressed by the Fourth Circuit:

> In both cases, the Court rejected the argument that the term "employee" as used in federal statutes should be interpreted in accordance with the common-law standard. The Court pointed out that the common-law test, which emphasizes the elements of supervision and control, was developed for the purpose of determining whether the extent of one person's control over the actions of another was sufficient to justify the imposition of vicarious liability on the controlling person *for the wrongful acts of the* person subject to control. *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468; *Hearst*, 322 U.S. at 129, 64 S.Ct. at 859. Instead, the Court explained, the content of the term "employee" in the context of a particular federal statute is "to be construed 'in the light of the mischief to be corrected and the end to be attained.'" *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468 (quoting *Hearst*, 322 U.S. at 124, 64 S.Ct. at 857). In interpreting statutory language so as to define the class of persons protected by the statute, a court must take as its "primary consideration" whether the inclusion of the disputed category of persons would effectuate the "declared policy and purposes" of the statute. *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468; *Hearst*, 322 U.S. at 131–32, 64 S.Ct. at 860–61.

*Darden*, 796 F.2d at 706. Thus, under this line of reasoning, the Court must consider whether plaintiff Stanley Waxman was within the class of persons whom ERISA was designed to protect.

In making this determination, the Court applies the standard articulated by the Fourth Circuit in *Darden*, except that inasmuch as *Darden* involved a claim for pension benefits, the standard is modified to apply to health benefits. Thus, the pertinent standard is as follows:

> *First*, did the sponsor of the health benefit plan take some action that created a reasonable expectation on the part of the individual claiming benefits that benefits would be paid to him in the future.
>
> *Second*, did the individual claiming benefits rely on that expectation by remaining for a substantial period of time in the sponsor's service and by foregoing other significant means of providing for his medical needs.
>
> *Third*, did the individual claiming benefits lack sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits.

*See id.* at 707.

Applying the standard to plaintiff Stanley Waxman, the Court finds that Waxman's limited relationship with Hardaway Construction Company precludes a finding that Waxman relied on an expectation that he would be receiving health benefits by remaining in defendants service for a substantial period of time. Assuming *arguendo* that Waxman was in defendants' service, this service was not for a substantial period of time, but at best, was sporadic and arose in relation to financing for particular real estate ventures. As a result, the second prong of the test articulated in *Darden* plainly is not satisfied and the Court concludes that plaintiff Stanley Waxman also was not an "employee" for purposes of ERISA under the above standard.

The Court, having determined that plaintiff is not an "employee" under either of the two standards enunciated above, must conclude that it lacks subject matter jurisdiction to adjudicate this matter. In making this finding, the Court does not find that the above standards both must be applied in all future cases.

### III. SUMMARY

Plaintiffs in this lawsuit assert a claim for medical and hospitalization coverage under a plan formulated and administered by defendants. Plaintiffs bring their claim pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

("ERISA"). This Court has subject matter jurisdiction to hear such a claim under ERISA against defendants only if plaintiff Stanley Waxman was one of defendants' employees. In this Memorandum, the Court considers the various definitions of "employee" used by other courts and by Congress in drafting ERISA and concludes that Waxman was not one of defendants' employees for purposes of ERISA. As a result, the Court DISMISSES this lawsuit for lack of subject matter jurisdiction.