David C. WOLCOTT, Plaintiff–Appellee, Cross–Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, and Nationwide Property & Casualty Company, Defendants–Appellants, Cross–Appellees.

Nos. 87–3846, 87–3870.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1988.

Decided Aug. 24, 1989.

Larry H. James (argued), Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for defendants-appellants, cross-appellees.

James W. Lewis, Lewis & Spencer, and C. William Brownfield (argued), Brownfield Law Offices, Columbus, Ohio, for plaintiff-appellee, cross-appellant.

John D. Luken, Nationwide Ins., Cincinnati, Ohio, Richard D. Panza, Mark P. Altieri, Richard A. Naegele, Wickens, Herzer & Parza, P.A., Lorain, Ohio, and Anne M. Richard and B. Lee Willis, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., Alexandria, Va., for amicus curiae.

Before JONES and GUY, Circuit Judges, and HILLMAN, Chief District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Defendants-appellants, Nationwide Mutual Insurance Company, *et al.* (Nationwide), appeal from the judgment of the district court granting plaintiff-appellee, David Wolcott's (Wolcott), motion for summary judgment. Because we hold that Wolcott is not Nationwide's "employee" within the meaning of Title I of the Employee Retirement Income Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA), we reverse the judgment of the district court.

## I.

From 1962 until April 1982, Wolcott was a commissioned insurance agent for Nationwide in Easton, Maryland. Wolcott operated his Nationwide agency under the name David C. Wolcott Agency (Wolcott Agency). During that period, Wolcott represented Nationwide exclusively, *i.e.* he

---

* The Honorable Douglas W. Hillman, United States District Court for the Western District of Michigan, sitting by designation.

was authorized to write policies only for Nationwide unless he received the express prior approval of Nationwide to write a policy through another carrier. Except for a two year period in the 1960's, Wolcott was compensated through commission.

The relationship between Wolcott and Nationwide was governed by a written contract (Agent's Agreement or Agreement) which was renewed and revised over the years. The Agent's Agreement included the terms and conditions of the Agents Security Compensation Plan (ASCP) which Nationwide created in 1969. The ASCP consisted of two programs known as the "Deferred Compensation Incentive Plan" and the "Extended Earnings Plan." Under the Deferred Compensation Plan, Nationwide maintained a retirement account for Wolcott and annually credited to that account, beginning after his fifth year of service, a sum based on their original and renewal service fee earnings for insurance policies. Under the Extended Earnings Plan, Nationwide agreed to pay Wolcott upon his retirement, termination, death, or disability, a sum equal to earnings from renewal fees over the prior twelve months.

The Agent's Agreement provided that in order for the agent to be entitled to payment of the ASCP, the cancellation of the Agent's Agreement must be "qualified."[1] In particular, the Agent's Agreement stated that Nationwide's obligation to pay benefits under the ASCP would terminate if a former agent engaged in competition with Nationwide within one year of the cancellation of the Agent's Agreement with Nationwide and within a twenty-five mile radius of the former business location of the agent. Nationwide's obligation would also cease if the former agent, at any time after the cancellation of the Agent's Agreement with Nationwide, induced a Nationwide policyholder to cancel a contract with Nationwide. The Agent's Agreement between Nationwide and Wolcott further provided that either party had the right to cancel the contract at any time after written notice.

The parties dispute the facts leading up to the cancellation of the Agent's Agreement. However, it is undisputed that in 1981 Wolcott's wife and daughter formed a company under the business names Wolcott and Associates and Corporate Risk Specialists ("Corporate Risk Specialists"), which was located at the same address and phone number as the Wolcott Agency. Wolcott's wife and daughter remained employed at the Wolcott Agency. Corporate Risk Specialists solicited and wrote policies for insurance companies other than Nationwide.

In April 1981, Corporate Risk Specialists sent George and Kathryn Hart a letter which advised them that their agency was then representing additional major insurance companies. Although the Harts were Nationwide policyholders, Corporate Risk Specialists enclosed with the letter a replacement insurance policy from a carrier other than Nationwide. The letter signed by Wolcott and Associates thanked the Harts for their past business and the loyalty they had displayed over the years. Apparently the letter came to Nationwide's attention when the Harts inquired about their Nationwide policy. On April 29, 1982, Wolcott was notified about the letter by his Nationwide regional sales manager. When asked about the circumstances regarding the letter to the Harts, Wolcott denied any responsibility for the actions of his wife and daughter. Nationwide then cancelled Wolcott's Agent's Agreement, and Wolcott sought review of this decision by an internal administrative review board. In May 1982, Wolcott formally joined Corporate Risk Specialists and thereafter wrote and solicited policies for carriers other than Nationwide. Subsequently, Nationwide affirmed the unqualified cancellation of Wolcott's Agent's Agreement, and Wolcott received notification of this decision in June 1982. Wolcott thereafter inquired about his benefits under the ASCP and was notified by Nationwide that he was ineligible

---

**1.** A "qualified" cancellation is defined in the Agent's Agreement as any cancellation of the agreement unless the agent has "induc[ed] or attempted to induce—either directly or indirect-ly—any policy holder to lapse, cancel, or replace any insurance in force with the Companies." J.App. at 31.

because of his violation of the forfeiture clause.

On April 27, 1984, Wolcott filed this instant action under 29 U.S.C. § 1132(a), which provides that a participant, as a beneficiary of an employee retirement income security plan, may bring a civil action to enforce provisions of the Act and recover benefits due him. Wolcott sought in particular to enforce the Act's nonforfeitability requirements and to recover benefits claimed to be due him under the ASCP.

Wolcott moved for summary judgment, and Nationwide filed a cross-motion for summary judgment claiming that Wolcott voluntarily forfeited any right he may have had to the claimed benefits. The district court held that Wolcott is an "employee" under ERISA, and that the Deferred Compensation Plan is a "pension benefit plan" which is not exempted from ERISA nonforfeitability requirements. The district court determined, however, that the Extended Earnings Plan is not a pension benefit plan under ERISA and therefore is not governed by the nonforfeiture provisions. Finally, the district court held that Wolcott does not have the right to enforce payment of benefits under the Deferred Compensation Plan until he reaches the age of 65 and, therefore, that his wife would have no survivorship rights in any benefits under the Deferred Compensation Plan should Wolcott die prior to reaching the age of 65.

Following the parties' receipt of the district court's judgment of July 15, 1987, both parties filed timely motions to alter and amend pursuant to Federal Rule of Civil Procedure 59(e). On August 12, 1987, the district court rendered a second memorandum and order. The district court denied Nationwide's motion and granted Wolcott's motion, in part, by clarifying his rights under ERISA with regard to the Deferred Compensation Plan in the event of his death or disability.

## II.

We first address Wolcott's contention that the district court erred by granting summary judgment in favor of Nationwide because there exists a genuine issue of material fact concerning Nationwide's claim that he breached the Agent's Agreement. A district court should grant summary judgment only if the "pleadings, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This court applies the same test as used by the district court in reviewing a motion for summary judgment. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987).

In support of his contention that there is a genuine issue of material fact regarding the alleged breach of the Agent's Agreement, Wolcott argues that the district court erroneously found that *he* had violated his Agent's Agreement as a result of the actions of his "subagents," Ruth Wolcott and Theresa Hurka. Wolcott contends that his wife and daughter were never authorized agents for Nationwide and, in fact, only worked as paid employees for the Wolcott Agency. While conceding that he was responsible for the activities of his subagents at the Wolcott Agency, Wolcott claims that he was not responsible for their activities at Corporate Risk Specialists.

Wolcott further argues that he was not associated with Corporate Risk Specialists prior to his "unqualified" termination, and asserts that this proposition is supported by the testimony of both his wife and daughter. Moreover, Wolcott contends that he never referred any current or prospective Nationwide clients to Corporate Risk Specialists or any other agency prior to April 29, 1982, and at no time during his almost twenty year association with Nationwide did he sell insurance coverage for any other carrier without Nationwide's express prior approval.

Wolcott concludes that Nationwide breached the Agent's Agreement by virtue of its "unqualified" termination, and the consequent forfeiture of the ASCP benefits. Thus, Wolcott asserts that because of Nationwide's breach, he was justified in his

subsequent competitive activities which fell within the provision of paragraphs 11(f)(1) and (3).

Confining our discussion to Wolcott's challenge to the district court's grant of summary judgment for Nationwide on the unqualified termination of plaintiffs Agent's Agreement, we note that the terms of the Agreement with respect to the payment of ASCP benefits are clear. Specifically, paragraph 11(e) of the Agreement provides: "Unless you have induced or attempted to induce, either directly or indirectly, policy holder to lapse, cancel, or replace any insurance contract in force with the companies, the cancellation of this Agreement shall be a qualified cancellation for the purpose of this Agreement." Paragraph 11(f) clearly provides that Nationwide has no liability to make payments under the ASCP if: (1) an agent directly or indirectly represents another insurance carrier within a 25–mile radius of his Nationwide location during the first year following termination of the Agent's Agreement; (2) retains Nationwide records; and (3) directly or indirectly induces Nationwide policyholders to transfer their policies to different carriers.

■ The principal issue therefore is whether Wolcott violated paragraphs 11(e) and (f) of the Agent's Agreement. In this case, after reviewing the evidence, the district court determined that Nationwide was entitled to summary judgment. Our review of the evidence persuades us that the district court did not err by granting summary judgment in favor of the defendants on the breach of contract claim. The evidence shows, notwithstanding Wolcott's protestations to the contrary, that Wolcott was directly responsible for the actions of his subagent, Ruth Wolcott, who, while employed at the Wolcott Agency, attempted to induce Nationwide policyholders to replace their policy with another policy provided by Corporate Risk Specialists. Further, Wolcott's disclaimer of responsibility for the activities of his subagents is effectively countered by the affidavit of George Frink, Nationwide's Vice–President for Marketing Services, which provides that in considera-

tion of Nationwide's certification of a solicitor under state law, "Nationwide has asked that the independent contractor agent take full responsibility for the actions of any solicitors appointed to him." Affidavit of George W. Frink at 2. Because Wolcott was charged by contract with accepting responsibility for the actions of his subagents, we find that Wolcott was directly responsible for the actions of his wife and daughter and, therefore, we agree with the district court's conclusion that Wolcott "attempted to induce policyholders to replace their policy within the meaning of paragraph 11(e)...." J.App. at 18. Thus, we find that the district court did not err by concluding that Nationwide's cancellation of the Agreement was "unqualified."

■ With regard to paragraph 11(f), the forfeiture provision of the Agent's Agreement, it is undisputed that Wolcott violated subsections (1) and (3). The district court properly found that Wolcott, in May 1982, joined Corporate Risk Specialists at the same location where he sold Nationwide policies for the Wolcott Agency. Because Wolcott went into competition with Nationwide within a year of the termination of his Agent's Agreement and because he solicited or attempted to induce his former Nationwide clients from his former office, the district court properly held that Wolcott violated the provisions of 11(f)(1) and (3) of the Agreement. We find that this conclusion is supported by Wolcott's admission that he engaged in competitive activity in May 1982, *see* Appellee's Br. at Appendix, I, J, K and Ruth Wolcott's testimony, Appellee's Br. at Appendix L 1–7. Therefore, because we have been unable to ascertain specific facts in the affidavits, depositions, and other admissions and documents in the record showing that there is a genuine issue of material fact for trial, we affirm the district court's judgment on the contract claim.

## III.

Nationwide argues that the district court erred in concluding that Wolcott was an "employee" for ERISA purposes. Because Wolcott is not an "employee," Nationwide

contends that the ASCP forfeiture provisions may be enforced against him because he has failed to satisfy the vesting requirements of ERISA.

The ERISA's vesting requirements are applicable *only if:* (1) Wolcott is Nationwide's "employee" within the meaning of ERISA; (2) the ASCP is a "pension benefit plan" within the meaning of ERISA; and (3) the ASCP is not a "top hat plan" which is exempted from the ERISA's vesting requirements.[2] 29 U.S.C. §§ 1132(a), 1002(2)(A), 1002(6) and 1002(7); *see also Fraver v. North Carolina Farm Bureau Mutual Insurance Co.,* 801 F.2d 675, 676–78 (4th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

In order to successfully maintain an action predicated on section 502(a) of ERISA, 29 U.S.C. § 1132(a), Wolcott must qualify as a "participant" in an employee benefit plan. *See Darden v. Nationwide Mutual Insurance,* 796 F.2d 701, 707 (4th Cir.1986). Under ERISA, a "participant" is defined as "any employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. § 1002(7). ERISA tersely defines "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). As noted by the Fourth Circuit in *Darden,* 796 F.2d at 704, and by the D.C. Circuit in *Holt v. Winpisinger,* 811 F.2d 1532, 1538 (D.C. Cir.1987), the statute provides scarce guidance for determining whether an individual should be treated as an "employee" for ERISA purposes.

The district court, in determining whether Wolcott was Nationwide's "employee" for ERISA purposes, applied a "totality of the circumstances" test. Under this test, the district court considered not only traditional common law agency factors, but also the additional factors enunciated in the Fourth Circuit's decision in *Darden.* The *Darden* court rejected the common law standard for defining "employee," and instead construed the term " 'in light of the

mischief [sought] to be corrected and the end [sought] to be attained' " by ERISA. 796 F.2d at 706 (quoting *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947)). Relying in part upon Congress's concern, as expressed in ERISA, that "many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such [employee benefit] plans," 29 U.S.C. § 1001(a), the *Darden* court reasoned that the class of protected persons under ERISA should include: (1) persons who had a reasonable expectation of retirement benefits; (2) persons who relied on that expectation; and (3) persons who lacked sufficient economic bargaining power to contract for nonforfeitable benefits. *Id.* at 706–7. Citing *Darden,* the district court concluded that "[Wolcott] is a member of the class of people which Congress sought to protect in enacting ERISA" and, therefore, that he was an "employee" of Nationwide within the meaning of ERISA. J.App. at 48.

■ Nationwide argues that the district court's decision is contrary to the weight of authority, and that the district court erred in applying the *Darden* test and, thereby, departing from the traditional common-law agency factors. We agree. In our view, the better reasoned position on meaning of the term "employee" is set forth in *Holt,* 811 F.2d at 1532. The *Holt* court held that, because of the absence of a comprehensive statutory definition, "one must look to common-law rules of agency" to determine "employee" status under ERISA. *Id.* at 1538, n. 44. The court observed in *Holt* that:

[t]he absence of a comprehensive definition of "employee" in ERISA and other features of that legislation indicate plainly enough that Congress intended the Secretary of the Treasury and the Secretary of Labor, who were the administrators of various ERISA provisions, to continue their practice of defining "employee" in terms of common-law agency principles.

---

**2.** A "top hat plan" is defined as "a plan which is unfunded and is maintained by an employer primarily for the purposes of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2).

811 F.2d at 1538, n. 44. (citations omitted). Further, the *Holt* court recognized that the Secretary of the Treasury has issued regulations to implement the ERISA's tax provisions, including the vesting requirements of section 411 of the Internal Revenue Code, which regulations also apply to the minimum vesting requirements under the labor law provisions of ERISA. *Id.* (citing 29 U.S.C. § 1202(c)). The pertinent Treasury Regulations provide that "[e]very individual is an employee if under the usual common-law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee." 26 C.F.R. 31.3121(d)–1(c)(1) (1988).

Finally, the *Holt* court observed that under ERISA, the Labor Department may not adopt vesting regulations which are inconsistent with the Internal Revenue Code. 811 F.2d at 1538, n. 44.

We concur in the *Holt* court's position that common-law rules of agency are properly applied under ERISA. The traditional common-law criteria that courts have employed include: 1) the degree of control and supervision over the manner in which the work is performed; 2) whether or not the "employee" is engaged in his own business; 3) the company's right to hire and discharge the persons doing the work; 4) the method of compensation to the "employee"; 5) whether the "employee" receives the same benefits as the company's regular employees; 6) who has control of the premises where the work is done; 7) how the parties structure their Social Security and income relations; 8) whether the "employee" stands to make a profit on the work of those working for him; 9) the amount of the "employee's" investment in facilities and equipment; 10) the belief of the parties as to their business relationship; 11) the amount of skill required in the particular occupation; and 12) the duration of time for which the "employee" is employed. *See Holt*, 811 F.2d at 1539–40 (citing Restatement (Second) of Agency § 220(2) (1958)); *Short v. Central States, Southeast and Southwest Pension Fund*, 729 F.2d 567 (8th Cir.1984), *Wardle v. Central States, Southeast and Southwest Pension Fund*, 627 F.2d 820, 824 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Applying these factors, we find that Wolcott was not Nationwide's "employee" within the meaning of ERISA, but rather was an independent contractor. The record shows that Wolcott hired his own employees and exercised managerial skill in the operation of his business. Further, Wolcott owned his own office condominium; maintained the office where the business was located; was responsible for most all of his own expenses; paid his own insurance; and was responsible for obtaining and maintaining a license to sell insurance. Further, he was paid on commission, and Nationwide made no deductions for Social Security or income taxes. In fact, Wolcott was responsible for reporting his own self-employed income to the Internal Revenue Service ("IRS"). He reported his commission income and business expenses to the IRS as self-employed income. Moreover, the Agent's Agreement stated that Wolcott was an independent contractor and not an employee. In addition, Wolcott was not eligible for regular employee benefits, including sick pay, vacation pay, and leave time, or any of the employee pension or retirement plans provided to Nationwide's regular employees. Finally, Wolcott admitted that he maintained his own Keough retirement plan. Given these undisputed facts, we conclude that Wolcott was not Nationwide's "employee" within the meaning of ERISA.

## IV.

For the above-stated reasons, we AFFIRM the decision of the district court regarding Nationwide's termination of the Agent's Agreement. However, we REVERSE the district court's decision finding that Wolcott is an "employee" under ERISA and, accordingly, hold that the ASCP forfeiture provisions may be enforced against him because he has failed to satisfy the vesting requirements of ERISA.